HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH OLSON f/k/a Sarah Grinenko,

Plaintiff,

vs.

OLYMPIC PANEL PRODUCTS, et al.,

Defendants.

NO. C07-5402 BHS

SUPPLEMENTAL APPENDIX OF
AUTHORITIES IN SUPPORT OF
DEFENDANT OLYMPIC PANEL
PRODUCTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT DISMISSING
SELECTED CLAIMS

NOTED: NOVEMBER 21, 2008

Defendant Olympic Panel Products hereby submits the following Supplemental Appendix of Authorities of cases cited according to Lexis Nexis's and Westlaw's electronic publication format in its Motion for Partial Summary Judgment Dismissing Selected Claims.

| Exhibit | Opinions |
|---------|----------|
| 1 | *Hale v. City of Dayton, et al.*, 88 Fair Empl. Prac. Cas. (BNA) 290 (February 8, 2002) |
| 2 | *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 327 (S.D. Ohio 2002) |
| 3 | *Haynie v. State of Michigan, et al.*, 2001 Mich. App. LEXIS 2539, at *11-12 (Mich. Ct. App. 2001) |

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

1

Dated this 28th day of October, 2008.

2

3                              GORDON, THOMAS, HONEYWELL, MALANCA,
                               PETERSON & DAHEIM LLP

4

5        By: _____

6                              Lewis L. Ellsworth, WSBA No. 11360
                               lellsworth@gth-law.com
7                              Elizabeth P. Martin, WSBA No. 12940
                               emartin@gth-law.com
8                              C. William West, WSBA No. 35542
                               wwest@gth-law.com
9                              Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUPP APPENDIX OF AUTORITIES RE: OPP MOTION PART SJ - 2 of 2
(C07-5402 BHS)
[1427938 v1.doc]                                      LAW OFFICES
                               GORDON, THOMAS, HONEYWELL, MALANCA,
                                        PETERSON & DAHEIM LLP
                                   1201 PACIFIC AVENUE, SUITE 2100
                                         POST OFFICE BOX 1157
                                   TACOMA, WASHINGTON 98401-1157
                               (253) 620-6500 · FACSIMILE (253) 620-6565



Not Reported in N.E.2d                                                                          Page 1
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

**H**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Second District,
Montgomery County.
Bonnie **HALE**, Plaintiff-Appellant,
v.
CITY OF **DAYTON**, et al., Defendants-Appellees.
**No. 18800.**

Feb. 8, 2002.

Female paramedic filed sexual harassment claims against city and various firefighters for hostile work environment and claims for intentional and negligent infliction of emotional distress. The Court of Common Pleas, Montgomery County, entered summary judgment in favor of city and firefighters. Paramedic appealed. The Court of Appeals, Wolff, P.J., held that: (1) firefighter was not liable as a non-supervisor under unlawful discrimination statute; (2) supervisor was not personally liable for discriminatory acts of others; (3) display of picture was an isolated incident that did not rise to level of hostile work environment; (4) genuine issue of fact existed to preclude summary judgment on intentional infliction of emotional distress claim; (5) paramedic failed to state a prima facie case of intentional infliction of emotional distress; and (6) there was insufficient evidence to show that firefighter made a false statement of fact to support claim of defamation.

Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Courts 106 ☜97(1)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling or as Precedents
                106k97 Decisions of United States

Courts as Authority in State Courts
                106k97(1) k. In General. Most Cited Cases

Federal case law interpreting Title VII workplace discrimination is generally applicable to cases brought under the state unlawful discriminatory practices provisions. 42 U.S.C.A. § 2000e; R.C. § 4112 et seq.

**[2] Civil Rights 78 ☜1116(2)**

78 Civil Rights
    78II Employment Practices
        78k1108 Employers and Employees Affected
            78k1116 Public Employers and Employees
                78k1116(2) k. Individuals as "Employers". Most Cited Cases
    (Formerly 78k146)

Firefighter who showed other firefighters a photograph of a nude woman who looked like a paramedic was not liable for sexual harassment under state's unlawful discriminatory practices statutes, where statutes only apply to discriminatory practices of an "employer," and firefighter was not a supervisor, manager, but was merely a co-worker. R.C. 4112.01(A)(2).

**[3] Civil Rights 78 ☜1736**

78 Civil Rights
    78V State and Local Remedies
        78k1734 Persons Protected, Persons Liable, and Parties
            78k1736 k. Employment Practices. Most Cited Cases
    (Formerly 78k451)

Supervisor of female paramedic, who sued for sexual harassment by hostile work environment, was not personally liable under unlawful discriminatory practices statutes for the discriminatory acts of another firefighter, where there were no allegations that supervisor committed any discriminatory acts. R.C. § 4112 et seq.

**[4] Civil Rights 78 ☜1185**

78 Civil Rights

**EXHIBIT 1**

Not Reported in N.E.2d                                                     Page 2
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

78II Employment Practices
     78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. R.C. § 4112 et seq.

**[5] Civil Rights 78 ☞1185**

78 Civil Rights
     78II Employment Practices
          78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
Firefighter's display of picture of naked woman who he claimed looked like a paramedic was harassment based on sex, even though city contended that it was merely generalized joking, where no evidence existed that firefighter ever displayed naked pictures of men resembling male firefighters. R.C. § 4112 et seq.

**[6] Civil Rights 78 ☞1185**

78 Civil Rights
     78II Employment Practices
          78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
Firefighter's conduct in displaying picture of a naked woman who resembled a paramedic was severe and pervasive enough for paramedic to perceive it as hostile and abusive in support of her claim that such conduct was sexual harassment, where paramedic had difficulty performing daily tasks for some time after

the incident, she underwent counseling, and was prescribed medication. R.C. § 4112 et seq.

**[7] Civil Rights 78 ☞1185**

78 Civil Rights
     78II Employment Practices
          78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
Whether an environment is "hostile" or "abusive" for purposes of establishing a hostile work environment on a claim of sexual harassment can be determined only by looking at all the circumstances; these may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. R.C. § 4112 et seq.

**[8] Civil Rights 78 ☞1185**

78 Civil Rights
     78II Employment Practices
          78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
Severity and pervasiveness of harassing conduct in sexual harassment case are to be looked at together so that deficiencies in the strength of one factor may be made up by the strength in the other. R.C. § 4112 et seq.

**[9] Civil Rights 78 ☞1185**

78 Civil Rights
     78II Employment Practices
          78k1181   Sexual   Harassment;   Work Environment
          78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
          (Formerly 78k167)
Harassing conduct, to constitute sexual harassment, must be severe or pervasive enough to create both an objectively hostile or abusive work environment-one that a reasonable person would find hostile or

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                    Page 3
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

abusive-and a subjectively hostile work environment-one that the victim perceived to be hostile or abusive. R.C. § 4112 et seq.

**[10] Civil Rights 78 &larr;1185**

<u>78</u> Civil Rights
    <u>78</u>II Employment Practices
        <u>78k1181</u> Sexual Harassment; Work Environment
        <u>78k1185</u> k. Hostile Environment; Severity, Pervasiveness, and Frequency. <u>Most Cited Cases</u>
      (Formerly 78k167)
Firefighter's conduct in displaying a picture of a naked woman who resembled a paramedic was an isolated incident that was not extremely serious, and thus, did not rise to the level of a hostile work environment to support paramedic's sexual harassment claim, where display of picture occurred on only two days to approximately 15 firefighters R.C. § 4112 et seq.

**[11] Judgment 228 &larr;181(21)**

<u>228</u> Judgment
    <u>228</u>V On Motion or Summary Proceeding
        <u>228k181</u> Grounds for Summary Judgment
            <u>228k181(15)</u> Particular Cases
                <u>228k181(21)</u> k. Employees, Cases Involving. <u>Most Cited Cases</u>
Genuine issue of material fact existed as to whether city acted quickly and effectively to correct the situation in response to paramedic's complaint regarding another firefighter's display of a picture of a naked woman that resembled her, precluding summary judgment as to hostile work environment claim, where three supervisors had knowledge of the picture and did nothing to stop the conduct or report the firefighter. R.C. § 4112 et seq.

**[12] Damages 115 &larr;57.21**

<u>115</u> Damages
    <u>115</u>III Grounds and Subjects of Compensatory Damages
        <u>115</u>III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            <u>115</u>III(A)2 Mental Suffering and Emotional Distress
                <u>115k57.19</u> Intentional or Reckless

Infliction of Emotional Distress; Outrage
        <u>115k57.21</u> k. Elements in General.
<u>Most Cited Cases</u>
    (Formerly 115k50.10)
To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and, was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

**[13] Judgment 228 &larr;185.3(21)**

<u>228</u> Judgment
    <u>228</u>V On Motion or Summary Proceeding
        <u>228k182</u> Motion or Other Application
            <u>228k185.3</u> Evidence and Affidavits in Particular Cases
                <u>228k185.3(21)</u> k. Torts. <u>Most Cited Cases</u>
Genuine issue of material fact existed as to whether firefighter knew or should have known that his conduct in displaying picture of overweight naked woman who resembled paramedic would cause her emotional distress, thus precluding summary judgment on paramedic's claim of intentional infliction of emotional distress, where firefighter knew paramedic and admitted that display of the picture would embarrass her and that she was sensitive about her weight, and firefighter displayed picture to approximately 15 other firefighters with suggestion that naked woman looked like paramedic.

**[14] Judgment 228 &larr;185.3(21)**

<u>228</u> Judgment
    <u>228</u>V On Motion or Summary Proceeding
        <u>228k182</u> Motion or Other Application
            <u>228k185.3</u> Evidence and Affidavits in Particular Cases
                <u>228k185.3(21)</u> k. Torts. <u>Most Cited Cases</u>
Genuine issue of material fact existed as to whether firefighter's conduct in displaying a picture of an

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                Page 4
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

overweight naked woman who resembled paramedic was so outrageous as to go beyond the bounds of decency, thus precluding summary judgment in paramedic's claim of intentional infliction of emotional distress, where action went beyond mere insult, firefighter knew that the situation would be embarrassing for a woman, display of the picture was in a male-dominated body-conscious environment, and picture was shown to approximately 15 firefighters.

[15] Damages 115 ⬡57.55

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.50 Labor and Employment
                    115k57.55 k. Sex and Gender. Most Cited Cases
                (Formerly 115k49.10)
Paramedic failed to make a prima facie case of negligent infliction of emotional distress in case against firefighter who displayed a picture of an overweight naked woman who resembled paramedic, where paramedic was not a bystander to an accident or in fear of the physical consequences to her own person, there was no claim of quid pro quo harassment or sexual touching, and claim was not against a supervisor.

[16] Libel and Slander 237 ⬡1

237 Libel and Slander
    237I Words and Acts Actionable, and Liability Therefor
        237k1 k. Nature and Elements of Defamation in General. Most Cited Cases
In order to state a cause of action for defamation, plaintiff must establish: (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement.

[17] Libel and Slander 237 ⬡21

237 Libel and Slander
    237I Words and Acts Actionable, and Liability Therefor
        237k20 Certainty
            237k21 k. Person Defamed. Most Cited Cases
Evidence was insufficient that firefighter who displayed a picture of an overweight naked woman who resembled paramedic made false statements of fact to support paramedic's defamation claim, where there was no evidence that firefighter attempted to mislead others into believing the picture was of paramedic, or made any statement of fact that the woman in the picture was paramedic.

Paul R. Leonard, Atty. Reg. No. 0031006, Dayton, OH, for plaintiff-appellant.
Neil F. Freund, Atty. Reg. No. 0012183, Dayton, OH, for defendants-appellees City of Dayton and Larry Collins.
Mark A. Tuss, Atty. Reg. No. 0006209, Dayton, OH, for defendant-appellee Jack Balazs.

*OPINION*

WOLFF, P.J.
*1 Bonnie Hale appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of the City of Dayton, Jack Balazs, and Larry Collins.

In August of 1998, Balazs, a firefighter for the City of Dayton, used his personal home computer to view images of nude overweight women on the internet. He downloaded a picture of a naked, overweight woman who resembled Hale onto his laptop computer and took the laptop to the firehouse where he worked. Hale was a paramedic with the City of Dayton. She and Balazs were co-workers, with no supervisory relationship between them, and were in different companies within the fire department. Balazs was assigned to Company Twelves, and Hale was assigned to Company Eights.

After taking the picture, which was stored on his laptop, to the firehouse, Balazs showed it to as many as fifteen of his coworkers during at least two days in August and September of 1998. These coworkers included members of his crew in Company Twelves, various firefighters from Company Eights, and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                                                                                Page 5
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

various firefighters from Company Fifteens. Balazs also called at least one person to the firehouse for the specific purpose of viewing the image. Some of the firefighters who viewed the image stated that Balazs had asked "Does this look like anybody you know?" or "Doesn't this look like a Dayton Paramedic? Doesn't this look like Bonnie [Hale]?" Others stated that he had told them to come look at the screen. Most of the firefighters viewing the image noted that it resembled Hale.

The firefighters who viewed the image included at least three lieutenants, [FN1] who are supervisory personnel at the fire department. None of the three lieutenants who viewed the image reported it to their superiors or took any action to stop Balazs' conduct. At least one of these supervisors, Lt. Pat Connaughton, agreed with Balazs that the picture resembled Hale. Another, Lt. Phil Plummer, saw that it was a picture of a nude woman but could not say who it resembled because he was not wearing his glasses. The third, Lt. James Cox, received an email of the picture from Balazs. He had heard that there was a picture of a nude female resembling a paramedic on the internet and had heard Hale's name in connection with the rumor. Cox mentioned the rumor at a union bargaining session at which Hale was present on September 12, 1998. Hale had not been aware of the picture before this time. Cox was unable to open the email from Balazs but gave a paramedic, Harry Hageman, permission to try to download the image from Cox's email. Hageman was able to download the image, and he did so at Hale's request.

> FN1. Hale asserts that four lieutenants viewed the picture. However, the statement of one indicates that he told Balazs that he did not have time to view the laptop and that he did not see the picture.

Hale reported Balazs' conduct to her supervisor, Lt. John Strukamp, on September 15, 1998. Strukamp contacted his superior, District Chief Fleming. Both men noted that Hale was crying, very upset, and unfit for duty. She was referred to the City of Dayton Employee Care and later told to go home. Hale was then placed on sick-leave and began receiving psychological treatment for depression. She was also prescribed medication. For a period of time following the incident, Hale had difficulty performing basic

daily tasks and working. She never resumed her job at the fire department but eventually went back to work at the part-time jobs she had already held.

**\*2** The fire department began an investigation of Balazs, which resulted in his admission to the allegations. The city initiated disciplinary proceedings against Balazs, who retired effective October 30, 1998 to avoid being fired.

Hale filed her complaint on November 16, 1998 against the City of Dayton, various city officials, and Balazs. Against all defendants, she alleged hostile work environment sexual harassment in violation of R.C. 4112.02, defamation, and invasion of privacy. Following some discovery, the city and Balazs filed motions for summary judgment on March 6 and March 8, 2000, respectively. Hale filed an amended complaint on June 12, 2000, adding claims of intentional and negligent infliction of emotional distress against Balazs and adding Collins, who was the chief of the fire department, as a defendant. On June 29, Collins filed a motion for summary judgment. On August 21, Balazs filed a motion for summary judgment on the intentional and negligent infliction of emotional distress claims. The trial court granted summary judgment in favor of all defendants [FN2] on March 14, 2001.

> FN2. Hale listed twelve defendants in her amended complaint, including three John Does, the City Manager, four City Commissioners, and the Mayor. Summary judgment was granted in favor of all defendants. In her brief, Hale only discusses the granting of summary judgment to the city, Balazs, and Collins. Therefore, we have limited our discussion to those defendants. However, our decision with regard to the city would apply as well to the city officials listed in the complaint.

Hale raises four assignments of error on appeal.

I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE DEFENDANT-APPELLEES' MOTIONS FOR SUMMARY JUDGMENT ON THE ISSUE OF SEX HARASSMENT/HOSTILE WORK ENVIRONMENT, A FORM OF SEX DISCRIMINATION.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                                              Page 6
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to the city, Balazs, and Collins on her hostile work environment sexual harassment claim.

Our review of the trial court's decision to grant summary judgment is *de novo.* See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46.

[1] This action was brought under R.C. Chapter 4112, which is Ohio's counterpart to Section 2000e, Title 42, U.S.Code ("Title VII"). Federal case law interpreting Title VII is generally applicable to cases brought under Chapter 4112. See *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 295, 703 N.E.2d 782; *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 421 N.E.2d 128.

[2] Initially, we must determine whether Balazs and Collins can be personally liable under R.C. Chapter 4112. Balazs argues that Chapter 4112 does not provide for individual liability for co-workers. We agree. Chapter 4112 provides for employer liability for employment discrimination. R.C. 4112.01(A)(2) defines "employer" as " * * * any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." The Supreme Court of Ohio has held that this definition of "employer" includes supervisors and managers. See *Genaro, supra,* at 300, 703 N.E.2d 782. However, we do not believe that it includes co-workers. In this case, Balazs was not Hale's supervisor in any way. He was merely a co-worker.[FN3] While he may be personally liable for his conduct under another theory of law, he cannot be liable under Chapter 4112 because he is not an

employer. Therefore, the trial court did not err in granting summary judgment in favor of Balazs on Hale's hostile work environment claim.

> FN3. We note that Hale does not even attempt to argue that Balazs was a supervisor or manager, but rather she describes him in her brief as "merely a co-employee."

*3 [3] Regarding the personal liability of Collins, the city argues that, as a supervisor, he can be liable under *Genaro* only for his own discriminatory acts, not for those of Balazs. Again, we agree. *Genaro* cannot be read to impose personal liability on supervisors for the discriminatory acts of their employees. Hale has not alleged that Collins himself committed any discriminatory acts against her or even that he furthered Balazs in his actions. She has alleged only that Collins should be vicariously liable for the acts of Balazs.[FN4] We do not believe that such liability is contemplated by Chapter 4112 or *Genaro.* Therefore, the trial court did not err in granting summary judgment in favor of Collins on Hale's hostile work environment claim.

> FN4. Hale's inclusion of Collins as a defendant in this action seems to stem mostly from her anger that he was not more empathetic and helpful to her during the investigation of Balazs. Even if we were to agree with Hale that Collins should have been more sympathetic to her situation, Chapter 4112 does not provide a cause of action against supervisors who are, at worst, rude and unsympathetic to employees while investigating their sexual harassment claims.

[4] We are thus left with the question of whether the trial court erred in granting summary judgment in favor of the City of Dayton on Hale's hostile work environment claim. The Supreme Court of Ohio has set forth the elements required to establish a *prima facie* case of hostile work environment sexual harassment under Ohio law:

In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                                    Page 7
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

*Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 176-77, 729 N.E.2d 726. The parties do not appear to dispute that Balazs' conduct was unwelcome, so we will turn to a discussion of the remaining three elements.

[5] The second element requires Hale to establish that the harassment was based on sex. In *Hampel*, the supreme court noted that "any harassment or other unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment." *Id.* at 179, 729 N.E.2d 726, quoting *McKinney v. Dole* (C.A.D.C.1985), 765 F.2d 1129, 1138-39. We reject the city's characterization of Balazs' behavior as generalized joking directed toward males and females alike. While such joking may very well have been prevalent, there is no evidence in the record to indicate that the generalized joking ever involved naked pictures as in this case. Thus, unless Balazs was in the habit of displaying naked pictures of men resembling male firefighters, we have little difficulty finding that Balazs' conduct would not have occurred but for the fact that Hale is a woman.

[6][7][8][9] Under the third element, Hale is required to show that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of her employment. We must consider the totality of the circumstances:

*4 [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Hampel, supra,* at 180, 729 N.E.2d 726, quoting *Harris v. Forklift Sys., Inc.* (1993), 510 U.S. 17, 23,

114 S.Ct. 367, 371, 126 L.Ed.2d 295. Furthermore, the severity and pervasiveness are to be looked at together so that "deficiencies in the strength of one factor may be made up by the strength in the other."*Id.* at 181.Contrary to Hale's assertion that she "needed only to perceive the environment to be abusive," the harassing conduct "must be severe or pervasive enough to create both an objectively hostile or abusive work environment-one that a reasonable person would find hostile or abusive-and a subjectively hostile work environment-one that the victim perceived to be hostile or abusive." *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715, 723, 729 N.E.2d 813.

We have no difficulty in finding that Hale perceived the environment at work to be hostile and abusive. She was unable to continue her job with the fire department. For some time after the incident, she had difficulty performing daily tasks. She underwent counseling and was prescribed medication. Therefore, Hale presented sufficient facts to survive a motion for summary judgment on the subjective prong of the analysis.

[10] However, Hale has failed to present sufficient facts to survive summary judgment on the objective prong of the analysis. In looking at when harassment becomes severe and pervasive enough to affect the terms and conditions of employment, courts have set a high bar. Courts have repeatedly held that isolated incidents, unless *extremely* serious, do not constitute a hostile work environment. See, e.g., *Faragher v. City of Boca Raton* (1998), 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (stating that " 'simple teasing,' * * * offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' "); *Morris v. Oldham Cty. Fiscal Court* (C.A.6, 2000), 201 F.3d 784, 790; *Hafford v. Seidner* (C.A.6, 1999), 183 F.3d 506, 514. Despite Hale's attempt to characterize Balazs' conduct as pervasive because he showed the picture to around fifteen firefighters, this really cannot be characterized as pervasive. The showing of the picture to firefighters occurred on only two days. Thus, at best, Balazs' actions were "isolated incidents" and as such would have to be extremely serious to be actionable under Chapter 4112. While we refuse to characterize Balazs' conduct as "casual joking" or "teasing" as the city does in its brief, we

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                    Page 8
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-
542

cannot find that it is extremely serious as required to create a hostile work environment actionable under Chapter 4112. Courts have generally only found isolated incidents to create a hostile work environment where they involve some form of sexual assault or touching. See, *e.g.*, *Morris, supra* (holding that conduct was not severe or pervasive where co-worker told several dirty jokes in plaintiff's presence, made one verbal sexual advance related to plaintiff's evaluation, referred to plaintiff once as "Hot Lips," and made comments about plaintiff's dress); *Brooks v. City of San Mateo* (C.A.9, 2000), 229 F.3d 917, 924 (holding that a single incident of fondling was not severe and pervasive); *Tatum v. Hyatt Corp.* (D.D.C.1994), 918 F.Supp. 5, 7 (holding that conduct was not severe and pervasive where a co-worker wrapped his arms around the plaintiff, rubbed against her to simulate sex, commented on her looks, and put a piece of ice down her shirt). But, see, *Little v. Windemere Relocation, Inc.* (C.A.9, 2001), 265 F.3d 903, 911 (holding that an incident in which a co-worker raped plaintiff three times was severe); *Guess v. Bethlehem Steel Corp.* (C.A.7, 1990), 913 F.2d 463, 464 (holding that a single incident in which plaintiff's supervisor forced her face against his crotch was severe). Hale cites to no case law to support her assertion that these isolated incidents were "extremely serious." While Balazs' actions are certainly deplorable, they simply do not constitute sufficiently severe or pervasive harassment to be actionable under Chapter 4112. Therefore, Hale has failed to present sufficient evidence of severe and pervasive harassment to survive a motion for summary judgment.

*5 [11] Because we have held that Hale did not satisfy the third requirement in the *prima facie* hostile work environment case, the issue of whether she satisfied the fourth is moot. However, the trial court granted summary judgment in this case because it found that Hale had not established the fourth element. In doing so, it relied on its finding that:

[T]he City of Dayton acted quickly and effectively after Ms. Hale brought to its attention the alleged conduct. Therefore, because Ms. Hale can not show that the City of Dayton failed to implement prompt and appropriate corrective action, it fails to satisfy all of the elements of employer liability as it pertains to hostile work environment sexual harassment.

While we may agree with the trial court that the city acted quickly once Hale brought the incident to the attention of her supervisor, we do not agree that Hale failed to present sufficient evidence regarding whether "the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel, supra,* at 177, 729 N.E.2d 726. We are particularly troubled by the evidence that at least three supervisors had some knowledge of Balazs' actions and failed to take any steps to report him or to stop his conduct. We would find that Hale had presented sufficient evidence on this element to survive summary judgment. However, because Hale failed to satisfy the third element, we find that the trial court did not err in granting summary judgment in favor of the City of Dayton on Hale's hostile work environment claim.

The first assignment of error is overruled.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING THE DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to Balazs on her claim of intentional infliction of emotional distress. Balazs argues, and the trial court held, that summary judgment was proper because he did not have the requisite intent to be liable for intentional infliction of emotional distress.

[12] To establish a claim for intentional infliction of emotional distress, a plaintiff must show:

(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and, was such that it can be considered as "utterly intolerable in a civilized community," * * * (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d                                                                 Page 9
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio-542

_Garrison v. Bobbitt_ (1999), 134 Ohio App.3d 373, 378-79, 731 N.E.2d 216. The supreme court has further described this tort:

*6 * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

_Yeager v. Local Union 20_ (1983), 6 Ohio St.3d 369, 374-75, 453 N.E.2d 666 (citations omitted).

[13] Balazs argues that, under _Yeager_, Hale "must present evidence that Balazs acted with an intent to harm her. In addition, [Hale] must present evidence that Balazs' intent was more than tortious, more than criminal, more than malicious and even more aggravating than what would entitle a party to recover punitive damages." We can only characterize this as an utter misreading of _Yeager_. We do not read _Yeager_ as requiring that a defendant have an intent level that is "more than tortious, more than criminal, more than malicious and even more aggravating than what would entitle a party to recover punitive damages." Rather, the quoted language from _Yeager_, as we interpret it, is merely illustrating the importance of the second element of the test-that the conduct be extreme and outrageous. Thus, we read _Yeager_ to say that, if the conduct is not extreme and outrageous, no amount of intent will create a cause of action for intentional infliction of emotional distress. The intent requirement for this tort is much less than Balazs would have us impose. Hale need only show that Balazs "either intended to cause emotional distress or knew _or should have known_ " that his actions would cause her emotional distress.

The trial court granted summary judgment in favor of Balazs because it found that Hale had not presented sufficient evidence to establish the intent requirement. The trial court focused on Hale's deposition statement that, to her knowledge, Balazs had "no intent to cause harm" to her and his statement that he did not intend to hurt or embarrass her. The trial court further found that there was "no evidence that Defendant Balazs knew or should have known that his actions would cause emotional distress to the Plaintiff." We disagree. Hale presented sufficient evidence on this issue to survive summary judgment. Balazs stated in his deposition that Hale "had been a friend of [his] for a long time," and he answered "Yes, I can" when asked, "Can you see how a situation like this would be embarrassing to a female?" Furthermore, he obviously realized that Hale was overweight given the picture he downloaded and could have inferred that she would be sensitive about that fact. It is also important to note that his actions took place in a male-dominated work environment and an environment where one's body is directly related to how well one can do his or her job. Finally, Balazs' actions were far from being an innocent jest. Balazs showed a naked picture of an obese woman to over a dozen of Hale's male coworkers and made statements that suggested that the woman looked like Hale. We believe that reasonable jurors could determine given these facts that Balazs should have known that his actions would cause Hale emotional distress.

*7 However, Hale must still satisfy the second, third, and fourth elements of the _prima facie_ case of intentional infliction of emotional distress. We have no difficulty in concluding that she has presented sufficient evidence on the third and fourth elements to survive summary judgment. She was unable to continue her job with the fire department. For some time after the incident, she had difficulty performing

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

daily tasks. She underwent counseling and was prescribed medication. These facts are sufficient to present a jury question regarding whether she suffered serious emotional distress. Furthermore, she has also presented sufficient evidence that Balazs' conduct was the proximate cause of her emotional distress.

[14] Therefore, we must address the second requirement-that Balazs' conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community."It is here that the language from *Yeager,* quoted *supra,* is particularly helpful. We believe that the actions taken by Balazs in this case rise above the level of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."Certainly, as compared to the facts of other cases in which courts have found summary judgment to be improper, the facts of this case present a jury question on the issue of whether the alleged conduct was extreme and outrageous. See, *e.g., Yeager, supra* (summary judgment was not proper where defendants threatened to injure the plaintiff and made menacing remarks about his family); *Garrison, supra* (summary judgment was not proper where defendants implied that plaintiff would physically harm others, arrested him for a violation that would humiliate him, and banned him from public property); *Meyers v. Hot Bagels Factory, Inc.* (1999), 131 Ohio App.3d 82, 721 N.E.2d 1068 (jury verdict in favor of plaintiff supported by sufficient evidence where owner of bagel store asked customer repeatedly if she was "a good fuck," told her she had a "nice firm ass," and told her a sexual anecdote). Here, Balazs showed a naked picture of an obese woman to over a dozen of Hale's male coworkers and made statements that suggested that the woman looked like Hale. He did so in a male-dominated body-conscious environment. He admitted that he understood that the situation would be embarrassing for a woman. Therefore, we find that Hale presented sufficient evidence on the second element.

Because Hale presented sufficient evidence to survive summary judgment on all the elements of an intentional infliction of emotional distress claim, the trial court erred in granting summary judgment in favor of Balazs on this claim.

The second assignment of error is sustained.

III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.

*8 Under this assignment of error, Hale argues that the trial court erred in finding that Ohio law does not allow a claim of negligent infliction of emotional distress where the plaintiff is not a bystander to an accident or in fear of physical harm to herself.

Ohio courts have long held that claims for negligent infliction of emotional distress will not lie where the plaintiff is not "a bystander to an accident" or "in fear of physical consequences to [her] own person." *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 40, 665 N.E.2d 1115. See, also, *Bunger v. Lawson Co.* (1998), 82 Ohio St.3d 463, 466, 696 N.E.2d 1029 (upholding an employee's claim for negligent infliction of emotional distress in a worker's compensation case, but stating that "[a] claim of negligent infliction of emotional distress is limited to instances 'where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril' ").

[15] To support her argument that Ohio law permits a claim for negligent infliction of emotional distress in sexual harassment cases, Hale cites to *Crihfield v. Monsanto Co.* (S.D.Ohio 1994), 844 F.Supp. 371. In that case, the Southern District of Ohio held that Ohio law allowed a cause of action for negligent infliction of emotional distress "in cases of on-the-job sexual harassment by a superior." *Id.* at 377.While we do not necessarily believe that this is a correct interpretation of Ohio law, we find *Crihfield* to be distinguishable from the case *sub judice. Crihfield* dealt with a *quid pro quo* sexual harassment case in which the plaintiff was subjected to indecent exposure and unwanted fondling by her supervisor with the prospect of job loss if she did not submit. See *id.*In this case, Hale alleges hostile work environment sexual harassment, and we have held that she did not make a *prima facie* case on that claim. Furthermore, the harassment Hale complains of was perpetrated by a co-worker, not a supervisor, and did not involve any sexual touching or exposure.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Thus, we find that, even if Ohio were to adopt *Crihfield*'s interpretation of Ohio law, the conduct Hale complains of would be insufficient to establish a claim for negligent infliction of emotional distress. Therefore, the trial court did not err in granting summary judgment to Balazs on this claim.

The third assignment of error is overruled.

IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING DEFENDANT-APPELLEE JACK BALAZS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF DEFAMATION OF CHARACTER.

Under this assignment of error, Hale argues that the trial court erred in granting summary judgment to Balazs on her claim of defamation. The trial court based its decision on the fact that there was no evidence that Balazs had ever stated that the woman in the picture was Hale.

[16][17] In order to state a cause of action for defamation, Hale must establish: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement."*Stanley v. City of Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912,* unreported, at *6, quoting *Pollock v. Rashid (1996), 117 Ohio App.3d 361, 368, 690 N.E.2d 903.* The trial court focused on the first requirement in its decision granting summary judgment to Balazs. It specifically found that Balazs' showing of the picture on the computer and his accompanying queries regarding who it resembled could constitute a statement. Furthermore, the trial court found that the statement tended "to cause injury to the Plaintiff's reputation or expose her to public hatred, contempt, ridicule, shame or disgrace or affect her adversely in her profession."However, the trial court found that the statement was not false. We believe that a more appropriate characterization is that the statement was not a false statement of fact.

*9 There is no evidence that Balazs told anyone that the woman in the picture was Hale. At best, he asked, "Doesn't this look like Bonnie?" This is a question, not a statement of fact. Furthermore, we find no evidence that Balazs intended to mislead people into believing that the picture was of Hale or that anyone was in fact mislead. None of the statements by the firefighters viewing the picture indicate that they believed it to be Hale. Some of them agree that it looked like her, but Hale herself stated that the picture resembled her. Therefore, Hale did not present sufficient evidence to establish a claim of defamation, and the trial court did not err in granting summary judgment to Balazs on that claim.

The fourth assignment of error is overruled.

The judgment of the trial court will be affirmed in part and reversed in part. We will reverse and remand for a jury trial on the intentional infliction of emotional distress claim. We will affirm the trial court's decision on the remaining claims.

BROGAN and FAIN, JJ., concur.
Ohio App. 2 Dist.,2002.
Hale v. City of Dayton
Not Reported in N.E.2d, 2002 WL 191588 (Ohio App. 2 Dist.), 88 Fair Empl.Prac.Cas. (BNA) 290, 2002 -Ohio- 542

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

211 F.R.D. 320                                                          Page 1
211 F.R.D. 320
**(Cite as: 211 F.R.D. 320)**

⚑United States District Court,
S.D. Ohio,
Eastern Division.
Collie L. BROWN Jr., Plaintiff,
v.
WORTHINGTON STEEL, INC., Defendant.
No. C-2-01-1113.

Oct. 9, 2002.

African-American employee brought action against employer alleging that employer discriminated against him in violation of Title VII by promoting and giving preferential job positions to less qualified Caucasian employees. On plaintiff's motion for leave to file amended complaint and for class certification, the District Court, Sargus, J., held that: (1) permissive joinder of another employee was not proper; (2) plaintiff failed to satisfy requirements for class action certification; and (3) proposed amendment adding founder and chief executive officer (CEO) of employer as defendants would be denied as futile.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure** ☞824
170Ak824 Most Cited Cases

**[1] Federal Civil Procedure** ☞834
170Ak834 Most Cited Cases
Delay alone is not a ground for denying leave to amend; the party opposing leave to amend must demonstrate significant prejudice. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☞834
170Ak834 Most Cited Cases
Court determines prejudice for purposes of granting leave to amend by considering whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in

another jurisdiction. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☞824
170Ak824 Most Cited Cases

**[3] Federal Civil Procedure** ☞834
170Ak834 Most Cited Cases
The longer the period of unexplained delay in seeking amendment of the pleadings, the lesser is the burden of demonstrating prejudice from such amendment. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[4] Federal Civil Procedure** ☞851
170Ak851 Most Cited Cases
If there is no set of facts that could be proven under an amendment would constitute a valid and sufficient claim, leave to amend should be denied. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[5] Federal Civil Procedure** ☞241
170Ak241 Most Cited Cases
Joinder rule imposes two requirements on the joinder of plaintiffs: (1) that the right to relief asserted by each plaintiff arises out of the same transaction or occurrence, and (2) that some question of law or fact common to all parties will arise in the action. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[6] Federal Civil Procedure** ☞217
170Ak217 Most Cited Cases
Permissive joinder of another employee as plaintiff in employment discrimination suit was not appropriate, notwithstanding that both plaintiff and proposed plaintiff relied on same legal theory of failure to promote based on race, where plaintiff failed to show that proposed plaintiff's right to relief arise out of the same transaction or occurrence; amended complaint provided no suggestion that plaintiff and proposed plaintiff worked at employer during the same time frame, in the same department, at the same job position, or under the same supervisor. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**[7] Federal Civil Procedure** ☞176
170Ak176 Most Cited Cases

EXHIBIT 2

Key elements in adequately defining a proposed class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[8] Federal Civil Procedure** 🔑184.10
170Ak184.10 Most Cited Cases
Proposed class definition was inadequate, where it consisted of African-Americans who sought promotion or who were denied promotion by defendant employer since the effective date of the Civil Rights Act of 1964, absent effort to limit the time frame, to specify which plant or facility of employer was at issue, or to define a class of employees with respect to the department they worked in, their status as non-exempt or non-supervisory employees, their membership in a union, or the types of promotions for which they applied. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[9] Federal Civil Procedure** 🔑184.10
170Ak184.10 Most Cited Cases
Numerosity requirement for class certification was not satisfied in employment discrimination suit brought on behalf of African-American employees who were denied promotion, where plaintiff provided no estimate of the size of the class. Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

**[10] Federal Civil Procedure** 🔑184.10
170Ak184.10 Most Cited Cases
Plaintiff's allegation that employer had a company-wide practice of denying African-Americans opportunities at advancement did not satisfy commonality requirement for class certification in employment discrimination suit, where class definition included all African-American employees who sought promotion or who were denied promotion by defendant employer since the effective date of the Civil Rights Act of 1964; factual circumstances of African-Americans who were denied promotions in 1965 would not be common with those of African-Americans who were denied promotions in 2000. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[11] Federal Civil Procedure** 🔑184.10
170Ak184.10 Most Cited Cases
Typicality requirement for class certification was not satisfied in employment discrimination suit alleging failure to promote African-American employees, where plaintiff did not suggest how his interests are aligned with members of the class who did not have a college degree, who worked in different departments, or who applied for positions at levels other than top shipper in the company hierarchy. Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[12] Civil Rights** 🔑1113
78k1113 Most Cited Cases
    (Formerly 78k143)
Under Title VII, individual employees or supervisors are not an "employer" and cannot be held personally liable. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[13] Civil Rights** 🔑1736
78k1736 Most Cited Cases
    (Formerly 78k451)
Ohio employment discrimination statute extends liability to individual supervisors whose conduct constitutes discrimination; however, a supervisor can be liable only for his own discriminatory conduct. Ohio R.C. § 4112.02.

**[14] Civil Rights** 🔑1736
78k1736 Most Cited Cases
    (Formerly 78k451)
Founder and chief executive officer (CEO) of employer could not be held liable
under Ohio statute for employment discrimination against African-American employee who alleged he was not promoted because of his race, absent allegation that founder and CEO participated in the decision not to promote. Ohio R.C. § 4112.02.
    **\*322** Jack Edwin McCormick, McCormick, Silver & Silver, Columbus, OH, for plaintiff.

    David A. Campbell, III, Jonathan Michael Norman, Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant.

                    *Opinion and Order*

SARGUS, District Judge.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

211 F.R.D. 320
211 F.R.D. 320
**(Cite as: 211 F.R.D. 320)**

Plaintiff Collie L. Brown Jr. brings this action for employment discrimination under Title VII and Ohio Revised Code Chapter 4112.02 against defendant Worthington Industries, Inc. Brown, an African American, alleges that his employer Worthington Steel discriminated against him by promoting and giving preferential job positions to less qualified Caucasian individuals. This matter is before the Court on plaintiff's August 6, 2002 motion for leave to file an amended complaint and for class certification (doc. 22). For the reasons set forth below, plaintiff's motion is DENIED.

**I. Leave to Amend**

**A. Standard**

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend the complaint after a responsive pleading has been filed only by leave of the court, but requires that such leave "be freely granted when justice so requires." Fed.R.Civ.P. 15(a). That standard was construed by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962):

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue *323 of the allowance of the amendment, futility of amendment, etc.--the leave sought should be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court ....

[1][2][3] Delay alone is not a ground for denying leave to amend. *Dana Corporation v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882, 888 (6th Cir.1990). The party opposing leave to amend must demonstrate significant prejudice. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir.1999); *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986). The · Court determines prejudice considering

whether the assertion of the new claim or defense

would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction. *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir.1994). The longer the period of unexplained delay, the lesser the burden of demonstrating prejudice. *Id.* Courts have frequently found prejudice where the amendment is made after the discovery deadline has passed, *Duggins*, 195 F.3d at 834 (Amendment sought after discovery and case dispositive motions deadlines had passed and while a motion for summary judgment was pending); *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir.1995)(Amendment sought one month before trial); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir.1989); *Janikowski v. Bendix Corporation*, 823 F.2d 945, 952 (6th Cir.1987), or on the eve of trial. *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549 (6th Cir.1986). A party who moves to amend late in the lawsuit has "an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 459 (6th Cir.2001) (Citation omitted). Nonetheless, even amendments made on the eve of trial are permissible when there is no demonstrable prejudice. *United States v. Wood*, 877 F.2d 453, 456-57 (6th Cir.1989)(Amendment permitted three weeks before trial). Further, even if there is prejudice, the Court may be able to fashion a remedy, such as assessing the moving party the costs of duplicative discovery, which would permit the amendment. *See, Janikowski*, 823 F.2d at 952; *Moore v. Paducah*, 790 F.2d 557, 562 (6th Cir.1986); *Adkins v. International Union*, 769 F.2d 330, 334 (6th Cir.1985).

[4] In addition to prejudice, futility may provide a basis for denying leave to amend. The Sixth Circuit has ruled that "[i]t is well settled that the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980); *Matthews v. Jones*, 35 F.3d 1046, 1050 (6th Cir.1994). A court will not ordinarily consider the merits of a proposed amended complaint in ruling on a motion for leave to amend unless it appears to be frivolous. *See Madison Fund, Inc. v. Denison Mines Ltd.*, 90 F.R.D. 89, 91 (S.D.N.Y.1981); *Key Pharmaceuticals, Inc. v. Lowey*,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

54 F.R.D. 447, 449 n. 5 (S.D.N.Y.1972). Normally, the merits of a complaint are best resolved through a motion to dismiss or a motion for summary judgment. *WIXT Television, Inc. v. Meredith Corp.*, 506 F.Supp. 1003, 1010 (N.D.N.Y.1980). However, if there is no set of facts that could be proven under the amendment would constitute a valid and sufficient claim, leave should be denied. *See Cooper v. American Employers' Ins. Co.*, 296 F.2d 303, 307 (6th Cir.1961).

**B. Plaintiff's Amended Complaint**

The amended complaint differs from the original complaint in three important ways. First, the amended complaint adds Douglas E. Thompson as a plaintiff. It alleges that Thompson is a former African-American employee of Worthington Steel, that he did not receive supervisor training, and that less qualified white employees were provided supervisor training.

Second, the amended complaint requests class certification of all African-Americans "who have sought promotion or who have *324 been denied promotion by the Defendant Employer since the effective date of the [Civil Rights] Act [of 1964]." The amended complaint demands an injunction ordering Worthington Steel to not discriminate in hiring and promotions. It demands that Worthington Steel be ordered to offer members of the class the positions they would have received but for defendant's discriminatory practices. And it further demands compensatory damages for lost wages.

Third, the amended complaint adds as defendants John H. McConnell and John P. McConnell, the founder and CEO respectively of Worthington Steel. It alleges that since the founding of the corporation these two defendants have engaged in racially discriminatory practices in hiring and promotion, and they "personally directed" that less qualified Caucasian individuals be hired and promoted. The practices of the two defendants has allegedly caused a disparate impact on plaintiff and members of the class.

**II. Discussion**

**A. Adding Douglas E. Thompson as a Plaintiff**

Federal Rule of Civil Procedure 20(a) governs permissive joinder of parties. It states in pertinent part:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Courts liberally permit joinder under Rule 20(a). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

[5] Rule 20(a) imposes two requirements on the joinder of plaintiffs: (1) that the right to relief asserted by each plaintiff arises out of the same transaction or occurrence, and (2) that some question of law or fact common to all parties will arise in the action. Wright & Miller, Fed. Prac. & Proc., § 1653. The Sixth Circuit has noted that the terms "transaction" and "occurrence" are to be given a broad interpretation. *Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir.1969); see also *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914 (9th Cir.1977); *Mosley v. The General Motors Corp.*, 497 F.2d 1330 (8th Cir.1974). "The Rule is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Luper v. Capital Conveyor*, 104 B.R. 881, 884 (Bankr.S.D.Ohio 1989). Courts are most inclined to grant joinder when there is overlapping proof and testimony for the claims of the plaintiffs. Wright & Miller, § 1653.

[6] Worthington Steel opposes joining Thompson to the lawsuit because it argues that his claims are separate and distinct from Brown's. While Brown claims he was not promoted to "top shipper," Thompson alleges that he was denied an opportunity to be promoted to supervisor. Worthington Steel argues that these allegations relate to separate transactions; that is, the alleged failure to promote Brown was one occurrence, and the alleged failure to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

211 F.R.D. 320                                                                    Page 5
211 F.R.D. 320
**(Cite as: 211 F.R.D. 320)**

promote Thompson was a different occurrence. Worthington Steel contends that there is no allegation that Brown and Thompson had the same supervisor or worked in the same department.

Plaintiff responds that the requirements of Rule 20(a) are satisfied because the amended complaint alleges that Brown and Thompson were denied promotions because of a overall policy or practice by Worthington Steel to not promote African-Americans. Plaintiff maintains that this practice has been in effect since the inception of Worthington Steel in 1959.

The Court finds that joinder of Thompson as a plaintiff is not proper. Plaintiff is correct that Brown and Thompson rely on the same legal theory of failure to promote based on race. However, the allegations of the amended complaint are insufficient to support a conclusion that the right to relief **\*325** asserted by each plaintiff arises out of the same transaction or occurrence. The amended complaint does not state the time frame Thompson worked at Worthington Steel, the dates Worthington Steel allegedly failed to promote him, what department he worked in, or position he worked at, or which supervisor(s) denied him the opportunity to advance. Likewise, the amended complaint does not state when Worthington Steel allegedly failed to promote Brown, what department he worked in, what position he worked at--other than the allegation that he eventually received a job as "top shipper," or which supervisor(s) failed to promote him. [FN1]

> FN1. While the amended complaint does not specify when Brown began working at Worthington Steel, it is clear that he has worked there from at least 1990 through the present.

In *Smith v. North Am. Rockwell Corp.*, 50 F.R.D. 515 (N.D.Okla.1970), plaintiffs brought suit for race-based employment discrimination. Despite plaintiffs' allegation of company-wide discriminatory practices, the court found that plaintiffs were not properly joined. While the claims of the plaintiffs relied on the same basic theory of law,

> The general notion that there may have been denials of promotion in at least three cases cannot support joinder, where any purported denials of promotion would have been made by different

supervisory personnel in different labor union and work environments, with respect to employees performing different types of work.

50 F.R.D. at 522. Further, "litigation of even any purported general policy of defendant ... would inevitably focus in detail on the separate work histories of each plaintiff." *Id.* The advantages of a single trial would be defeated, the court concluded, because each plaintiff's case "would be heard end-to-end, and each party would await the hearing of evidence as to all others." *Id.* at 523. *See also Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446 (N.D.Cal.1975) (denying motion to join plaintiff in discrimination suit because new plaintiff was not in same job situation as were the original plaintiffs); *Weir v. Litton Bionetics, Inc.*, No. H-85-2545, 1986 WL 11608 (D.Md.1986) (severing claims because departments, job positions, and work histories of plaintiffs were different). *Compare Ward v. Johns Hopkins Univ.*, 861 F.Supp. 367 (D.Md.1994) (denying motion for severance because plaintiffs alleged they were harassed by the same individual).

Here, the amended complaint provides no suggestion that Brown and Thompson worked at Worthington Steel during the same time frame, in the same department, at the same job position, or under the same supervisor. Brown alleges that he was not promoted to top shipper, while Thompson alleges that he was denied supervisor training. For purposes of the present motion, plaintiffs' contention that Worthington Steel had a company-wide policy against promoting blacks is not in dispute; however, the amended complaint wholly fails to indicate how, from a factual standpoint, Brown's and Thompson's experiences with that policy were sufficiently similar to make a single trial desirable for the administration of their claims.

**B. Motion for Class Certification**

District courts are required to conduct a "rigorous analysis" into whether the prerequisites of Fed.R.Civ.P. 23 are met before certifying a class. *See General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Fed.R.Civ.P. 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *see also Weathers v. Peters*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974). The party seeking class certification bears the burden of proof. *See Cash v. Swifton Land Corp.,* 434 F.2d 569, 571 (6th Cir.1970); *see also In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

To meet this burden, plaintiffs must first show that all four of the prerequisites of Fed.R.Civ.P. 23(a) are satisfied. See *American Medical,* 75 F.3d at 1079. These prerequisites are often referred to as the numerosity, commonality, typicality, and adequacy of representation requirements. After showing that these requirements are satisfied, plaintiffs must demonstrate that the action falls *326 within at least one of the subcategories of Rule 23(b). *Id.* An action is not maintainable as a class action merely because it is designated as such in the pleadings. *See Cash,* 434 at 571. A mere recitation of the language of Rule 23(a) is not enough. *See Weathers,* 499 F.2d at 1200. Rather, "[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *Id.*

[7] The motion to certify must be denied on a number of grounds. First, the proposed class definition is inadequate. The party moving to certify must sufficiently define the class. *See Reeb v. Ohio Dept. of Rehabilitation,* 203 F.R.D. 315, 319 (S.D.Ohio 2001) (holding that a class is not properly defined when a court "must come to numerous conclusions regarding class membership or must adjudicate the underlying issues on behalf of each class member."). Key elements to defining a class include: "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Reeb,* 203 F.R.D. at 319 (citing *Crosby v. Soc. Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986)).

[8] Here, the proposed class is "African-Americans who have sought promotion or who have been denied promotion by the Defendant Employer since the effective date of the [Civil Rights] Act [of 1964]." There is no effort to limit the time frame, to specify which plant or facility of Worthington Steel is at issue, or to define a class of employees with respect to the department they worked in, their status as non-exempt or non-supervisory employees, their

membership in a union, or the types of promotions for which they applied.

[9] Second, plaintiff has not satisfied any of the four Rule 23(a) requirements. The amended complaint does not contain "an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *See Weathers,* 499 F.2d at 1200. Plaintiff has provided no estimate of the size of the class. Fed.R.Civ.P. 23(a)(1) (the class be "so numerous that joinder of all members is impracticable"); *see Rex v. Owens,* 585 F.2d 432, 436 (10th Cir.1978) ("[T]he party who asserts the existence of the class ... must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.").

[10] Rule 23(a)(2) also requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Plaintiff attempts to meet the commonality requirement by alleging that Worthington Steel has had a company-wide practice of denying African-Americans opportunities at advancement. Plaintiff alleges that this practice has had a disparate impact on the plaintiff class, so much so that an African-American has never occupied a management or supervisor position at Worthington Steel since its founding in 1959. It is true that allegations of disparate impact upon a minority group which stems from a company-wide policy of discrimination often lend themselves to class actions. *See Bacon v. Honda of America Mfg., Inc.,* 205 F.R.D. 466, 478-79 (S.D.Ohio 2001). Nonetheless, the breadth of the proposed class definition leaves the commonality requirement practically impossible to fulfill. It is difficult to believe that Worthington Steel's practices with respect to promotions have remained unchanged since 1959. Personnel, business practices, and management styles change over time. The factual circumstances of African-Americans who were denied promotions in 1965 will not be common with those of African-Americans who were denied promotions in 2000.

[11] Plaintiff has made no attempt to show how his claims are "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The amended complaint alleges that Brown was informed in 1990 that he needed a college degree to obtain a promotion, that he received such a degree in 1996,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

and that he sought the position of top shipper but less qualified Caucasian individuals were given the job. Typicality exists when the "representative's interests [are] aligned with those of the represented group." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996). Plaintiff has not suggested how his interests are aligned with members of the class who did not have a *327 college degree, who worked in different departments, or who applied for positions at levels other than top shipper in the company hierarchy.

Rule 23(a)(4) further requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiff has not made even the barest showing of how he will be an adequate class representative. Without such a showing, certification cannot be granted because a final judgment in a class action is binding on all class members. *See American Medical*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). A plaintiff "may not be a class representative if [his] claims are subject to unique defenses that place [him] in a position that is antagonistic to the interests of the class." *Reeb*, 203 F.R.D. at 322 (citing *Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D.Ohio 1998)).

Finally, plaintiff has not satisfied any of the criteria set forth in Rule 23(b). Indeed, plaintiff has not stated under which subsection of Rule 23(b) he seeks certification. The amended complaint demands both injunctive relief and compensatory damages. With no direction from plaintiff, the Court will not chose the subsection for him. [FN2]

> FN2. It should be further noted, as defendant points out, that plaintiff has failed to meet the minimum requirements of S.D. Ohio Local Civ. R. 23.2.

**C. Adding John H. McConnell and John P. McConnell as Defendants**

The amended complaint alleges that "Defendants McConnells have, since the founding of the corporation, engaged in unlawful discriminatory practices in both hiring and promotion of personnel at the Defendant corporation." They have "personally directed that persons be hired and/or promoted by the corporation who were not members of the class."

[12] Defendant correctly opposes joining the McConnells as defendants on grounds of futility. Under Title VII, individual employees or supervisors are not an "employer" and cannot be held personally liable. *Wathen v. General Elec. Co.*, 115 F.3d 400 (6th Cir.1997).

[13] Ohio law does provide for supervisory liability under O.R.C. Chapter 4112.02. In *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999), the Ohio Supreme Court held that, unlike Title VII, the language of Chapter 4112 extends liability to individual supervisors whose conduct constitutes discrimination. Importantly though, a supervisor can be liable only for his own discriminatory conduct. 84 Ohio St.3d at 300, 703 N.E.2d at 788 ("[I]ndividual supervisors and managers are accountable for *their own discriminatory conduct* occurring in the workplace environment.") (emphasis added). In other words, only the "decision maker" of the adverse employment action is liable. *Jones v. Kilbourne Medical Laboratories*, 162 F.Supp.2d 813, 830 (S.D.Ohio 2000). "*Genaro* **cannot be read to impose personal liability on supervisors for the discriminatory acts of their employees.**" *Hale v. City of Dayton*, No. 18800, 2002 WL 191588, at *3 (Ohio Ct.App. Feb.8, 2002).

[14] Here, there is no allegation that the McConnells participated in the decision(s) not to promote plaintiff Brown. [FN3] Plaintiff does not articulate a specific policy promulgated by the McConnells which adversely affected him. The amended complaint alleges only that Brown directed complaints to John P. McConnell "regarding discrimination on the corporation's shop floor." The fact that McConnell "failed to act upon" Brown's complaints is insufficient to impose liability on him. *See Hale*, 2002 WL 191588, at * 3, n. 4 ("Chapter 4112 does **not provide a cause of action against supervisors who are, at worst, rude and unsympathetic to employees ....").**

> FN3. The amended complaint does allege that defendants personally engaged in discrimination against the class, but, for the reasons stated above, the motion for class certification must be denied.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

211 F.R.D. 320
211 F.R.D. 320
**(Cite as: 211 F.R.D. 320)**

Page 8

**III. Conclusion**

 For the reasons set forth above, the Court DENIES plaintiff's August 6, 2002 motion *328 for leave to file an amended complaint and for class certification. (Doc. 22).

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in N.W.2d

Not Reported in N.W.2d, 2001 WL 1152896 (Mich.App.)

Page 1

▶Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Court of Appeals of **Michigan**.
Carol **HAYNIE**, Personal Representative of the
Estate of Virginia Rich, Deceased, Plaintiff-
Appellant,
v.
STATE of **Michigan**, Department of State Police,
Daniel Kechak, and Daniel Payne, Defendants-
Appellees.
No. 221535.

Sept. 28, 2001.

Before: HOLBROOK, P.J., and MCDONALD and
SAAD, JJ.

PER CURIAM.
**\*1** Plaintiff, personal representative of the estate of
decedent, Virginia Rich, appeals as of right from the
trial court's order granting summary disposition to
defendants on plaintiff's sexual harassment, sexual
discrimination, and weight discrimination claims.

I. Facts and Proceedings

On January 17, 1997, capitol security officers
Virginia Rich and Canute Findsen shot and killed
each other while on duty. Following the incident,
plaintiff filed this action under the Civil Rights Act
FN1 (CRA) against decedents' employer, State of
**Michigan**, **Michigan** Department of State Police,
and State Police supervisors Daniel Kechak and
Daniel Payne. Specifically, plaintiff claimed that
Findsen sexually harassed Rich by making
unwelcome comments about Rich's weight, gender,
and abilities, thereby creating a hostile work
environment. Plaintiff alleged that Rich told Kechak
and Payne about Findsen's behavior, but that they
failed to stop the harassment.

FN1.MCL 37.2101*et seq.*.

In lieu of filing an answer, defendants filed a motion

for summary disposition under MCR 2.116(C)(7) and
MCR 2.116(C)(8). On April 8, 1998, the trial court
granted summary disposition to defendants on
plaintiff's sexual harassment claim because she failed
to establish a prima facie case of hostile work
environment. Thereafter, the trial court dismissed
plaintiff's claims against Kechak and Payne, finding
that they may not be held individually liable under
the CRA. Plaintiff later voluntarily dismissed her
weight discrimination claim.

II. Analysis

A. Hostile Work Environment Sexual Harassment
Claim

Plaintiff contends, correctly, that the trial court erred
in granting summary disposition to defendants on her
sexual harassment claim.

We review a trial court's grant of summary
disposition de novo. *Edelberg v. Leco Corp.* 236
Mich.App 177, 179; 599 NW2d 785 (1999) .FN2

> FN2. Our Supreme Court articulated the
> following standard of review for a motion
> under this rule in *Maiden v. Rozwood,* 461
> **Mich.** 109, 119; 597 NW2d 817 (1999):
>
> A motion under MCR 2.116(C)(8) tests
> the legal sufficiency of the complaint. All
> well-pleaded factual allegations are
> accepted as true and construed in a light
> most favorable to the nonmovant. *Wade v.*
> *Dep't of Corrections,* 439 **Mich.** 158,
> 162; 483 NW2d 26 (1992). A motion
> under MCR 2.116(C)(8) may be granted
> only where the claims alleged are "so
> clearly unenforceable as a matter of law
> that no factual development could
> possibly justify recovery."*Id.* at 163; 483
> NW2d 26. When deciding a motion
> brought under this section, a court
> considers only the pleadings.MCR
> 2.116(G)(5).

As the trial court observed, plaintiff's complaint does

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**EXHIBIT 3**

not allege that Rich was subjected to unwelcome conduct or communication of an overtly sexual nature. Moreover, plaintiff's counsel admitted that Findsen's allegedly discriminatory comments "were not sexual in nature." However, plaintiff says that gender-related, offensive comments are sufficient to sustain her claim of hostile work environment based on sexual harassment.

The CRA allows a claim of hostile work environment based on sexual harassment pursuant to M.C.L. § 37.2103(i)(iii) which provides:

(i) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:

(iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, ... or creating an intimidating, hostile, or offensive employment ... environment.

To survive a motion for summary disposition under MCR 2.116(C)(8) for a hostile work environment sexual harassment claim, a plaintiff must allege the following elements:

*2 (1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [ *Radtke v. Everett*, 442 Mich. 368, 373, 382-383; 501 NW2d 155 (1993), citing M.C.L. § 37.2103(h) and M.C.L. § 37.2202(1)(a).]

Here, the trial court ruled that plaintiff failed to state

a claim on which relief could be granted because she did not allege that Findsen's conduct or comments were sexual in nature or that Findsen referred to sexual activities or propositions.

This Court addressed this issue in *Koester v. City of Novi*, 213 Mich.App 653; 540 NW2d 765 (1995), in which the plaintiff, a patrol officer, was subjected to the following comments about her pregnancy: "you should have thought about raising a family before you made a career choice,""women should stay home for at least two years after having children," and "how can I give you more [benefits] for an intentional act [getting pregnant] than I give to officers who are injured in an accident?" *Id.* at 666.Further, when the plaintiff informed her superior about her second pregnancy he responded, "Gee, thanks" and another superior declined to issue the plaintiff pants to accommodate her pregnancy and instead suggested she wear pants loaned to her by other officers or a large pair she could "grow into." *Id.* at 658-659.

This Court held that the CRA specifically defines sexual harassment "as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." *Id.* at 668-669.The Court further held that "conduct or communication based on gender is inconsistent with the examples given in the statute-sexual advances, sexual favors-that all concern overtly sexual, as opposed to gender-based conduct." *Id.* at 669-670.Because the plaintiff failed to show that plaintiff's superiors made overtly sexual comments, this Court ruled that the trial court should have granted defendants' motions for summary disposition and directed verdict on plaintiff's sexual harassment claim. *Id.*

Our Supreme Court reversed this Court's ruling and held that the unwelcome sexual conduct or communication " 'need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." ' *Koester v. City of Novi*, 458 Mich. 1, 15; 580 NW2d 835 (1998), quoting *Oncale v Sundowner Offshore Services, Inc*. 523 U.S. 75, 80; 118 S Ct 998; 140 L.Ed.2d 201 (1998). Accordingly, the Court ruled that "[a] trier of fact may find sexual harassment when 'the harasser is motivated by general hostility to the presence of women in the workplace." ' *Koester, supra*, at 15,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 2001 WL 1152896 (Mich.App.)

Page 3

quoting *Oncale, supra,* at 80.Thus, the Court ruled that a plaintiff may prove a claim of hostile work environment based on sexual harassment if the employer's comments are gender-motivated, but not overtly sexual.

**\*3** Here, plaintiff's complaint alleges that, (1) as a female, she belonged to a protected group, (2) that Findsen made comments to her based on her sex, (3) that Findsen made frequent, unwelcome and derogatory comments about her based on and motivated by her gender which (4) interfered with her employment and created a hostile and offensive work environment and (5) that defendants knew about the offensive comments and hostile environment, yet failed to take prompt and adequate remedial action.

Based on the above allegations and because plaintiff was not required to allege that the hostile comments were overtly sexual in nature under *Koester, supra,* we hold that plaintiff set forth a prima facie hostile work environment sexual harassment claim. Accepting plaintiff's allegations as true, her claim is not clearly unenforceable as a matter of law and it is possible for plaintiff to develop a factual record to justify her claim for relief on this issue.[FN3]*Maiden, supra,* at 119.Therefore, the trial court erred by granting summary disposition to defendants under MCR 2.116(C)(8) on this issue.[FN4]

> FN3. Furthermore, and contrary to defendants' argument, it appears that plaintiff's complaint is "specific enough to reasonably inform the adverse party of the nature of the claims against him." *Weymers v. Khera,* 454 Mich. 639, 654; 563 NW2d 647 (1997); MCR 2.111(B)(1).

> FN4. Plaintiff also claims that the trial court erred by granting summary disposition to defendants because it decided the motion pursuant to MCR 2.116(C)(10) rather than under MCR 2.116(C)(8), the rule defendants argued precluded plaintiff's claim. However, the record shows that the trial court decided the motion under (C)(8) and does not indicate that the court considered evidence outside the pleadings.

Because we reverse the trial court's dismissal of plaintiff's hostile work environment sexual

harassment claim, we also hold that the trial court abused its discretion to the extent it prohibited discovery on this issue. *In re Hammond Estate,* 215 Mich.App 379, 387; 547 NW2d 36 (1996).

### B. Claims Against Kechak and Payne

Plaintiff argues that the trial court erred by dismissing her claims against Kechak and Payne because, as Rich's supervisors, they were "employers" under the CRA and should be held personally liable for their conduct in this case.

We affirm the trial court's dismissal of Kechak and Payne because plaintiff asserts no allegation that either defendant harrassed Rich or engaged in any discriminatory conduct against her. Instead, plaintiff merely alleges that Kechak and Payne are personally liable under the CRA for "failing to take appropriate steps" to correct or end Findsen's alleged harassment. Our review of federal and state case law interpreting Title VII and the CRA leads us to conclude that a supervisor's failure to correct discriminatory harassment does not give rise to individual liability under applicable employment discrimination laws, state or federal.

The CRA defines an employer as *"a person who has 1 or more employees, and includes an agent of that person."*MCL 37.2201(a). The definition of employer under Title VII of the United States Civil Rights Act also includes a reference to "any agent of that person." 42 USC § 2000e(b). The overwhelming majority of federal courts interpreting the Title VII definition hold that "the language 'any agent of such a person' is designed to incorporate the principles of respondeat superior into Title VII rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases."[FN5] *Lenhardt v Basic Institute of Technology, Inc,* 55 F3d 377, 380 (CA 8, 1995). Similarly, as our Supreme Court recently observed regarding the CRA, the reference to "an agent" in the definition "addresses an employer's *vicarious liability for sexual harassment committed by its employees....*" *Chambers v Trettco, Inc,* 463 Mich. 297, 310; 614 NW2d 910 (2000) (emphasis added).

> FN5. See also *Wathen v. General Electric Co,* 115 F3d 400, 405-406 (CA 6, 1997); *Tomka v. Seiler Corp,* 66 F3d 1295, 1313-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d                                                                              Page 4
Not Reported in N.W.2d, 2001 WL 1152896 (Mich.App.)

1314 (CA 2, 1995), abrogated on other grounds *Burlington Industries, Inc v. Ellerth*, 524 U.S. 742; 118 S Ct 2257; 141 L.Ed.2d 633 (1998); *Birkbeck v. Marvel Lighting Corp*, 30 F3d 507, 510 (CA 4, 1994); *Grant v. Lone Star Co*, 21 F3d 649, 652 (CA 5, 1994); *Williams v. Banning*, 72 F3d 552, 554 (CA 7, 1995); *Miller v Maxwell's International, Inc*, 991 F.2d 583, 586-587 (CA 9, 1993); *Gary v. Long*, 59 F3d 1391, 1399 (U.S. App DC, 1995).

*\*4* This Court most recently considered the CRA definition of "employer" in *Meagher v. Wayne State University*, 222 Mich.App 700; 565 NW2d 401 (1997), in which the plaintiff brought an age discrimination claim under the CRA against her employer, Wayne State University, and against four defendant-employees in their individual capacities. *Id. at 706.*Our Court affirmed the trial court's ruling that the plaintiff's claims against three defendants were frivolous because she failed to allege that they engaged in any discriminatory conduct, and were merely asked to investigate the plaintiff's allegedly discriminatory discharge. *Id. at 728-729.*In considering the plaintiff's claims in light of the CRA's definition of "employer," the Court opined:

The mere fact that *M.C.L. § 37.2201(a)* defines "employer" as including an agent does not automatically authorize a claim against an agent. MCL 37.2202 defines the prohibited acts of the "employer." It is one thing for an employee to file a claim against an employing entity (here, the university) under agency principles for the individual or collective acts of its agents that give rise to an inference of discriminatory practices or acts, see, e.g., *Champion v. Nationwide Security, Inc*, 450 Mich. 702, 712; 545 NW2d 596 (1996), it is quite another thing for an employee to file a claim against a particular agent for prohibited acts. In the present case, plaintiff's presumptive approach to age discrimination focused on Van Meter's alleged discriminatory conduct in discharging the plaintiff on the basis of the plaintiff's age. We do not find that plaintiff has cited any basis for filing claims against the other three individual defendants for Van Meter's alleged discriminatory conduct, even if there was some involvement in the matter (e.g., a post-termination request for an investigation of the reasons for the discharge).... [*Meagher, supra*, at 728-729.]

We agree with the reasoning in *Meagher* and the overwhelming majority of state and federal courts interpreting the same or similar definitions of employer: A supervisor who is not alleged to have engaged in any harassing conduct may not be held personally liable under the CRA for an alleged failure to adequately investigate or respond to a harassment complaint.[FN6]Not only has plaintiff failed to allege that Kechak or Payne engaged in any harassment or discriminatory conduct against Rich, she has failed to provide any basis for their individual liability under the CRA. Accordingly, the trial court properly granted summary disposition to Kechak and Payne because plaintiff failed to state a claim on which relief can be granted.

> FN6. The question whether a supervisor or other employee may ever be held personally liable under the CRA is not before us. Plaintiff relies on *Jenkins v American Red Cross*, 141 Mich.App 785; 369 NW2d 223 (1985) for the proposition that any employee in a supervisory capacity may be held personally liable under the CRA. In *Jenkins*, this Court held that the plaintiff's supervisor and another manager could be held individually liable under the CRA for their intentional discrimination and disparate treatment of the plaintiff based on race. *Id. at 795, 799-800.*Relying on *Munford v. James T Barnes & Co*, 441 F Supp 459 (ED Mich, 1977), the Court reasoned that because the CRA definition of employer "includes an agent of that person," the supervisors could be sued in their individual capacities because they "were responsible for making personnel decisions affecting plaintiff."*Jenkins, supra*, at 799-800.
>
> Here, unlike *Jenkins*, plaintiff does not claim that either Kechak or Payne engaged in any alleged discriminatory acts against Rich. And, notwithstanding the overly broad language of *Jenkins*, virtually no court has held a non-harassing supervisor personally liable for an alleged failure to adequately investigate or respond to a sexual harassment complaint, and we decline to do so here.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in N.W.2d                                                    Page 5
Not Reported in N.W.2d, 2001 WL 1152896 (Mich.App.)

Furthermore, the holding in *Munford,* on which the *Jenkins* Court relied, was explicitly rejected by *Wathen, supra,* in which the Sixth Circuit Court of Appeals ruled that individual supervisors cannot be held personally liable under Title VII and that the reference to "agent" in the definition of employer merely creates respondeat superior liability.*Wathen, supra,* at 406.Thus, the overwhelming majority of courts considering the issue have ruled that, regardless whether the supervisor engaged in harassing conduct, there is no individual liability under Title VII or comparable state civil rights acts absent explicit language imposing, for example, aider and abettor liability. See note 5, *supra;* see also DC Code Ann 2-1401.02(10); Ohio Rev Code Ann 4112.01(A)(2); *Genaro v. Central Transport, Inc,* 84 Ohio St 3d 293; 703 N.E.2d 782 (1999).

Indeed, the majority of courts have ruled that the plain language, statutory scheme, legislative history and policy and purpose of Title VII and state civil rights acts do not support claims against individual employees regardless whether they engaged in the harassing conduct.

For that reason, it is likely that the *Jenkins* Court would have ruled differently if it had the benefit of the considerable body of well-reasoned case law construing the definition of employer under Title VII and other, similarly-worded state civil rights acts. However, as noted above, we are not faced with the question whether a supervisor or other employee may ever be held personally liable under the CRA and we leave it to another panel to reevaluate the *Jenkins* holding, and perhaps bring **Michigan** law in line with the vast majority of courts interpreting federal and state employment discrimination statutes.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

Judge MCDONALD not participating.

Mich.App.,2001.
Haynie v. State, Dept. of State Police
Not Reported in N.W.2d, 2001 WL 1152896 (Mich.App.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.