UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH GRINENKO,

        Plaintiff,

   v.

OLYMPIC PANEL PRODUCTS, et al.,

        Defendants.

CASE NO. C07-5402BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

    This matter comes before the Court on Defendant Olympic Panel Products' ("Olympic") Motion for Partial Summary Judgment Dismissing Selected Claims. Dkt. 170. This motion was filed on behalf of Olympic, Defendant Mel Matson and Defendant Dwight Midles (collectively, "Defendants"). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    Except where otherwise indicated, the following facts are undisputed or taken in the light most favorable to Plaintiff, the nonmoving party:

    Ms. Grinenko was employed by Olympic from October of 2006 until May 18, 2007. Dkt. 17 at 3. Defendant Mel Matson was Ms. Grinenko's immediate supervisor. *Id.* In March of 2007, Ms. Grinenko was the victim of a sexual assault that caused her serious injury. *Id.* Ms. Grinenko requested time off from Mr. Matson. *Id.* at 4. Mr. Matson instructed Ms. Grinenko to meet with him and Defendant Dwight Midles, a human

resources director. *Id.* Mr. Matson and Mr. Midles required that Ms. Grinenko furnish a copy of the police report documenting the sexual assault before Ms. Grinenko would be permitted to take time off and was questioned at length and in detail about the subject matter of the report. Ms. Grinenko provided the police report, and Mr. Midles and Mr. Matson advised Ms. Grinenko that the document would be placed in her employee file. *Id.* Ms. Grinenko was ultimately granted leave. *Id.*

When Ms. Grinenko returned to work after her leave of absence, Mr. Matson met with Ms. Grinenko and told her that he had disclosed the matter of the sexual assault to an Olympic employee, Toinette Wines, and that Ms. Grinenko should talk to Ms. Wines. *Id.* at 5. Ms. Grinenko maintains that she did not authorize the disclosure of the information relating to her assault, and contends that the disclosure created "a previously non-existent interest in her by male coworkers." *Id.* Ms. Grinenko's amended complaint details various encounters with male employees who are not the subject of the instant motion, who began to treat her with "overwhelming hostility" and made various sexual comments and unwanted advances towards her. *Id.*; *see also* Dkt. 180, 3-8.

Ms. Grinenko also alleges that an employee, Randy Ward, told her that Mr. Midles told Mr. Ward that Mr. Midles "never believed [that Ms. Grinenko had been sexually assaulted] . . . [but instead] thought [she] was just trying to get time off work." Dkt. 171 at 4 (Deposition of Sarah Grinenko). Mr. Ward denies having this conversation with Mr. Midles. *Id.* at 10 (Deposition of Randy Ward).

Ms. Grinenko testified that Mr. Matson never directed any sexually offensive conduct towards her, but that he failed to respond effectively to her complaints about the conduct of other Olympic employees, and that he had a dismissive attitude about her complaints. *Id.* at 5 (Deposition of Sarah Grinenko). She also testified that Mr. Midles never directed any sexually offensive statements or conduct towards her. *Id.* at 7. However, Ms. Grinenko also maintains that when Mr. Ward made "flashing gestures"

ORDER - 2

toward her in an effort to get her to expose her breasts, Mr. Matson "enjoyed a good laugh at [Ms. Grinenko's] expense." Dkt. 180 at 4.[1]

In April 2007, Ms. Grinenko reported her coworkers' conduct to Larry Brown, who is another one of her immediate supervisors. She contends that Mr. Brown told her that he would speak to Mr. Matson about the matter. Mr. Matson later promised Ms. Grinenko that he'd "look into" the matters and told her to inform the coworkers that their advances were not welcome.

Ms. Grinenko maintains that she again complained to Mr. Matson about coworkers' conduct on May 14, 2007. In total, she testified that she complained about the coworkers' conduct on three occasions. Dkt. 171 at 6. Ms. Grinenko contends that the conduct continued despite her reporting to Mr. Matson.

According to Ms. Grinenko, Mr. Matson was dismissive of her complaints, and told her "not to worry about [the conduct] and just go back to work." Dkt. 180 at 7. She also maintains that Mr. Matson had told her on a prior occasion that she needed to tell male coworkers "that she had a boyfriend if she wanted to avoid such unpleasantness." Dkt. 17 at 11; *see also* Dkt. 171 at 6.

Shortly after making her last complaint, Ms. Grinenko provided two-weeks notice of her resignation, and maintains that she was constructively discharged. *Id*. at 20.

Ms. Grinenko filed a 27-page amended complaint on August 30, 2007. Dkt 17. The following causes of action are at issue: (1) invasion of privacy claim against Olympic, Mr. Matson and Mr. Midles based on the alleged disclosure of information

---

[1]Defendants maintain that Ms. Grinenko's allegation about the flashing incident was "manufactured" in a sham affidavit which she included in her response to the instant motion (Dkt. 180-2), and that the affidavit contradicts her prior deposition testimony. Dkt. 197, 6-7. But in Ms. Grinenko's deposition, which Defendants filed with the Court, Ms. Grinenko stated, "[Mr. Matson] did not say anything to me [that was sexually explicit] [but when] . . . Randy Ward did the flashing gesture in front of Mel Matson and Larry Brown, they were laughing, and they had a conversation which I was later told about." Dkt. 171 at 5.

relating to Ms. Grinenko's reporting of the sexual assault,[2] (2) "sexual harassment/hostile work environment/retaliation/termination in violation of public policy" under Title VII and the Washington Law Against Discrimination ("WLAD") against Olympic, and under the WLAD against Defendants,[3] (3) infliction of emotional distress against Defendants, (4) outrage against Defendants, (5) "sexually pervasive and hostile work environment" against Olympic.[4] *Id.*, 17-23. Ms. Grinenko also named Jane Doe Midles and Jane Doe Matson as Defendants to the claims against the Mr. Midles and Mr. Matson. *Id.*, 1-3.

## II. DISCUSSION

### A.  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move to dismiss the following claims against Mr. Midles, Jane Doe Midles, Mr. Matson, and Jane Doe Matson, individually and in their marital communities: (1) invasion of privacy, (2) sexual harassment, (3) sexual discrimination, (4) "hostile work environment sexual harassment and/or discrimination," (5) retaliation, (6) termination in violation of public policy, and (7) intentional infliction of emotional distress and/or outrage. Dkt. 170 at 2.

Defendants also move to dismiss the following claims against Olympic: (1) invasion of privacy, (2) retaliation, (3) termination in violation of public policy, and (4) intentional infliction of emotional distress and/or outrage. *Id.*

Finally, Defendants move to dismiss Ms. Grinenko's duplicative claim located on page 23 of her complaint (Dkt. 17). *Id.*, 2-3.

---

[2]The Court previously dismissed Ms. Grinenko's invasion of privacy claim based on the inquiry conducted by Defendants, concluding that the claim was preempted by the Labor Management Relations Act. Dkt. 147 at 7.

[3]The Court previously dismissed Ms. Grinenko's Title VII claims against Mr. Matson and Mr. Midles. Dkt. 59 at 5.

[4]Defendants also move the Court to dismiss Ms. Grinenko's duplicative claims.

ORDER - 4

## B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## C. DISCRIMINATION

Defendants move to dismiss Ms. Grinenko's discrimination claims against Mr. Midles and Mr. Matson in their individual and marital capacities.[5] Defendants maintain that dismissal is proper because (1) Ms. Grinenko has testified that neither Midles nor Matson ever behaved improperly or engaged in any affirmative acts of discrimination towards her, (2) Midles and Matson cannot be held personally liable for the acts of other employees, (3) they cannot be held liable based on their alleged lackluster response to Ms. Grinenko's complaints, and (4) a spouse or marital community is not a proper defendant for discrimination claims under the WLAD.

In Washington, the state courts apply the same burden-shifting scheme to discrimination cases under RCW 49.60 as the federal courts do to Title VII cases. *Hill v. BCTE Income Fund-I*, 144 Wn.2d 172, 185-86 (2001) (adopting Title VII analysis from *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

A plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he or she was performing his job satisfactorily; and (3) he or she suffered an adverse employment action or was treated less favorably than others. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *Id*. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id.* at 804.

---

[5]For purposes of deciding the instant motion, the Court considers Ms. Grinenko's sex discrimination, sexual harassment, and hostile work environment together, and will use these terms interchangeably. In this case, Ms. Grinenko's sex discrimination, sexual harassment, and hostile work environment claims are all included under one cause of action. *See* Dkt. 17 at 18. In addition, factual allegations giving rise to each of these claims are essentially the same.

In Washington, sex discrimination includes sexual harassment that "unfairly handicaps an employee . . . in his or her work performance and as such is a barrier to sexual equality in the workplace." *Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 791 (2004) (*citing Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 852-53 (2000)), *see also* 1B WAPRAC § 61.22 (2008) (sexual harassment is considered a form of discrimination based on sex). There are two types of sexual harassment cases: quid pro quo cases and hostile work environment cases. "The elements of a hostile work environment sexual harassment claim are: (1) unwelcome conduct, (2) based on sex, (3) affecting the terms and conditions of employment, and (4) imputed to the employer." *Perry*, 123 Wn. App. at 791; *see also Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (Under Title VII, "to prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment").

An employer can be found liable based on the theory of respondeat superior for the discriminatory actions of its employees. *Brown v. Scott Paper Worldwide Co.*, 143 Wn.2d 349, 360 n. 3 (2001). Supervisors, in contrast, may be liable "when they *affirmatively* engage in discriminatory conduct." *Id.* (emphasis in original). Supervisors may be found liable when they aid another in discrimination. *Id.* at 360-61 (*citing* RCW 49.60.220).

Ms. Grinenko offers three bases for the discrimination claim, which apparently arise from alleged sexual harassment: first, she alleges that her discrimination claim against Midles and Matson should proceed because they encouraged other employees to discriminate against her; second, she maintains that Midles and Matson engaged in sexual harassment by telling others about the assault and by ignoring her complaints; and third, she maintains that Mr. Matson harassed her by laughing when another employee made a flashing gesture towards her. Dkt. 180, 9-11.

Ms. Grinenko's discrimination claim against Mr. Midles must fail. First, Ms. Grinenko testified that Mr. Midles never said or did anything to her that she found to be sexually offensive. *See* Dkt. 171 at 5-7 (Ms. Grinenko's deposition).

Second, Ms. Grinenko has provided no legal authority that supports her claim that Mr. Midles' alleged statement about the sexual assault to Mr. Ward can constitute sexual harassment under the WLAD.[6] Mr. Midles' alleged disclosure did not take place in Ms. Grinenko's presence; his conduct was not affirmatively directed toward Ms. Grinenko. Ms. Grinenko also fails to demonstrate how this statement supports her contention that Mr. Midles encouraged sexual harassment or discrimination.

Finally, Ms. Grinenko did not address the issue of whether Mr. Midles can be liable under Title VII based on his alleged failure to respond to her complaints about the sexual harassment. Indeed, Ms. Grinenko did not cite *any* federal statute or federal case law to support the Title VII claims she alleged in her complaint. *See generally,* Dkt. 180 (Plaintiff's response). The Court is unaware of any legal authority that could support Ms. Grinenko's apparent claim that a human resources director can be held liable for a failure to adequately respond to complaints about sexual harassment. In any event, it is unclear whether Ms. Grinenko even complained to Mr. Midles about her coworkers' conduct. In her response to the instant motion, Ms. Grinenko contends that Mr. Midles "ignored her pleas to stop the attacks" of her coworkers. *Id.* at 10. In support of this argument, she cites a deposition where Ms. Grinenko states that she complained to Mr. Matson, not Mr. Midles. *Id.* (citing "Dep of Grinenko", Dkt. 180-4, 19-20).

Ms. Grinenko's claim against Mr. Matson may proceed. Ms. Grinenko has alleged that she reported the details of her sexual assault to Mr. Matson, that she complained to Mr. Matson about several Olympic employees' inappropriate sexual comments and

---

[6]Ms. Grinenko failed to direct the Court to any admissible evidence that Mr. Midles ever made this statement. Her own statement that Mr. Ward told her that Mr. Middles made this statement is hearsay-within-hearsay, and Ms. Grinenko has offered no exception under the hearsay rule. *See* Fed. R. Evid. 802 and 805.

conduct towards her, that the alleged harassment continued, and that Mr. Matson had laughed in response to an employee making a "flashing gesture" toward Ms. Grinenko. Against this background, there is a genuine dispute of material fact as to whether Mr. Matson participated in or encouraged sexual harassment.[7]

**D.  OUTRAGE**

Defendants move for summary judgment on Ms. Grinenko's outrage claim.[8] Mr. Matson maintains that the misconduct Ms. Grinenko alleges is not extreme enough to constitute outrage. In addition, Mr. Matson maintains that his alleged failure to respond to the complaints cannot constitute outrage. Mr. Midles also moves to dismiss this claim. He contends that the sole basis for Ms. Grinenko's outrage claim is her allegation that Mr. Midles made hurtful disclosures about Ms. Grinenko to another employee, Mr. Ward. Finally, Olympic moves for summary judgment because "no reasonable juror could conclude" that Olympic is liable for outrage under respondeat superior based on Midles' and Matson's alleged conduct. Dkt. 170 at 10.

To state a claim for the tort of outrage or intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Seaman v. Karr*, 114 Wn. App. 665, 684 (2002). The conduct in question must

---

[7]Ms. Grinenko also claims that Midles and Matson sexually harassed her by "grilling" her about the details of the sexual assault. Dkt. 180 at 10. The Court previously dismissed Ms. Grinenko's invasion of privacy claim based on Midles' and Matson's alleged inquiry into Ms. Grinenko's request for time off work because of the sexual assault, concluding that the claim is preempted by the LMRA. Dkt 147 at 7. Ms. Grinenko's discrimination claims, to the extent they are based solely on the inquiry, are also preempted. Defendants have filed a separate motion for partial summary judgment on this issue as it relates to the outrage claim. Dkt. 187. It is not clear why Defendants filed a separate motion for partial summary judgment on this issue, rather than addressing the issue in their reply to the instant motion. In any event, the motion (Dkt. 187) is now moot and should be stricken.

[8]In Washington, outrage and intentional infliction of emotional distress claims are treated as one in the same. *Snyder v. Medical Serv. Corp. of Eastern Wash.*, 98 Wn. App. 315, 321 (1999). Accordingly, the Court considers Ms. Grinenko's infliction of emotional distress and outrage claims (Dkt. 17 at 22) as one cause of action.

ORDER - 9

be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citation omitted). The question of whether conduct is sufficiently outrageous is ordinarily for the jury. However, the trial court makes the initial determination of whether "reasonable minds could differ about whether the conduct was so extreme as to result in liability." *Id.* (*citing Dicomes v. State*, 113 Wn.2d 612, 630 (1989)). Among other factors, in making this determination a court considers "whether the defendants were aware that there was a high probability that their conduct would cause severe distress, and they consciously disregarded it." *Id.* at 685.

Ms. Grinenko maintains that a reasonable fact finder could conclude that Midles and Matson are liable for the tort of outrage. She maintains that Midles and Matson "ignored her pleas to act to stop the attacks of other[] [employees]." Dkt. 180 at 10. Ms. Grinenko also maintains that Mr. Matson is liable for outrage because he told Ms. Wines about the sexual assault, and because he laughed at Mr. Ward's "flashing gesture" toward Ms. Grinenko. *Id*.

Ms. Grinenko's outrage claim against Mr. Midles fails because no reasonable jury could conclude that his alleged conduct was so extreme in degree as to constitute outrage. Ms. Grinenko testified that Mr. Midles never said or did anything to her that she found to be sexually offensive. Mr. Midles' alleged failure to respond to Ms. Grinenko's complaint cannot rise to the level of outrage. Mr. Midles' alleged disclosure to Mr. Ward about the sexual assault also cannot constitute outrage. First, the disclosure was not made in Ms. Grinenko's presence. Second, Ms. Grinenko has provided no admissible evidence in support of her contention that Mr. Midles made the alleged statement. *See* Section (B), page 8, note 6, *supra.*

Ms. Grinenko's outrage claim against Mr. Matson and Olympic may proceed. There are outstanding facts that preclude summary judgment, which include whether Mr. Matson had knowledge of Ms. Grinenko's alleged susceptibility, and whether Mr. Matson

participated in or encouraged treatment of Ms. Grinenko in a manner that constitutes outrage.

**E.     INVASION OF PRIVACY**

Ms. Grinenko contends that Defendants invaded her privacy by disclosing the information regarding the assault, which she disclosed to Defendants in confidence. Defendants move to dismiss what they characterize as an invasion of privacy claim based on "publication of private affairs." Dkt. 197 at 8. Defendants contend that Ms. Grinenko's claim fails to establish a prima facie case because she has not alleged that Defendants "published," as defined by Washington case law, the information about the assault.

In Washington, there are four types of invasion of privacy claims: (1) intrusion upon seclusion, (2) appropriation or exploitation of a plaintiff's name, (3) public disclosure of private facts, and (4) placing another in false light. *Eastwood v. Cascade Broadcasting Co.*, 106 Wn.2d 466, 469 (1986). These four causes of action each involve interference with an individual's interest in leading a secluded and private life, "free from the prying eyes, ears and publications of others." *Id.* (*citing* Restatement (Second) of Torts § 652A cmt. b (1977)).

An invasion of privacy by public disclosure of private facts in Washington follows the Restatement (Second) of Torts. *White v. Town of Winthrop*, 128 Wn. App. 588, 593-94 (2005). "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id.* (*citing* Restatement (Second) of Torts § 652D (1977)). "Publication" in this context means communication to the public at large, and communication to a single person generally does not qualify. *Fisher v. State ex rel. Dep't of Health*, 125 Wn. App. 869, 879 (2005). The *Fisher* court also recognized that, under some circumstances where the scope of a publication is limited, a court may balance the degree of offensiveness of the material disclosed against the limited scope of the publicity.

1  *Id.*, 879-880 (*citing Reid v. Pierce County*, 136 Wn.2d 195, 199-200 (1998)) (holding that
2  an invasion of privacy claim could proceed where a medical examiner showed pictures of
3  the plaintiff's deceased family member to coworkers).

4  Ms. Grinenko apparently alleges invasion of privacy by publication and contends
5  that Mr. Matson invaded her privacy by disclosing information relating to the assault to
6  Ms. Wines. She also maintains that Mr. Matson told Mr. Ward that Ms. Grinenko's
7  "story" about the assault was not credible. Ms. Grinenko contends that disclosure of this
8  private information to other employees meets the elements of an invasion of privacy claim.
9  Dkt. 180 at 12 (*citing Blackwell v. Harris Chem. North America, Inc.*, 11 F. Supp. 2d
10 1302, 1309-10 (D. Kan. 1998)) (concluding that an invasion of privacy claim based on
11 disclosure of medical information to other employees survived a motion to dismiss
12 pursuant to Fed. R. Civ. P. 12(b)(6)).

13 The Court concludes that Ms. Grinenko's invasion of privacy claim should be
14 dismissed. Ms. Grinenko fails to demonstrate that Midles or Matson publicized the
15 information about her assault. She has only alleged that Matson and Matson disclosed the
16 information to two individuals, Ms. Wines and Mr. Ward. Ms. Grinenko has provided
17 competent evidence that a disclosure was made to only one individual, Ms. Wines. Under
18 Washington case law, such a limited disclosure generally does not satisfy the publication
19 requirement of an invasion of privacy by publication claim.

20 Ms. Grinenko also fails to provide admissible evidence that could support a finding
21 that the alleged disclosure was so highly offensive that it outweighed the limited scope of
22 the publication. She has not directed the Court to evidence or allegations that indicate what
23 specific information Mr. Matson disclosed to Ms. Wines. Ms. Grinenko alleged only that
24 Mr. Matson informed her that he had discussed her "situation" with Ms. Wines. *See* Dkt.
25 180 at 2; *see also* Dkt. 171 at 4 (Deposition of Ms. Grinenko) (testifying only that Mr.
26 Matson disclosed to Ms. Wines "what happened to [her]"). Ms. Grinenko also provided a
27 document which she claims are Ms. Wines' answers to an investigator's questions
28

regarding this alleged disclosure, but this document also fails to specify what was disclosed. Dkt. 180-5, 12-13.[9]

Additionally, Ms. Grinenko has provided no evidence from which a trier of fact could infer that Mr. Matson disclosed Ms. Grinenko's reporting of the assault with intent or knowledge that the information would be further disseminated. By Ms. Grinenko's own account, Mr. Matson informed her that he was referring Ms. Grinenko to Ms. Wines because Ms. Wines would be "a good person to talk to." Dkt. 17 at 5. Ms. Grinenko has not even directed the Court to admissible evidence, such as an employee's deposition, that another employee learned of the assault as a result of Mr. Matson's disclosure. Finally, because Ms. Grinenko reported her assault to the police, she presumably had the knowledge or the expectation that the police would pursue the assailant and seek a conviction, which would become public record. The information surrounding the assault, then, is not analogous to a medical examiner showing private pictures of a plaintiff's deceased family member to coworkers. *See Reid, supra,* at 11.

In sum, Ms. Grinenko has not sufficiently alleged, much less provided any admissible evidence to support, a cognizable invasion of privacy claim that can survive Defendants' motion for summary judgment.

**F.  RETALIATION**

Defendants move to dismiss Ms. Grinenko's retaliation claim because she has not alleged any participation in protected activity.

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link

---

[9]This document provides no useful or admissible evidence. Plaintiff maintains that this document contains an investigator's notes, yet directs the Court to no affidavit or signature of the investigator. The pages cited by Plaintiff contain an individual's short-hand notes. The only specific reference to Mr. Matson is the following note: "[n]o knowledge of Mel Matson telling anyone else." In any event, to the extent the notes contain statements by Ms. Wines, this document contains inadmissible hearsay. Fed. R. Evid. 802. Plaintiff offers no exception to the hearsay rule which could make this document admissible.

ORDER - 13

between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.* Washington applies essentially the same standard for retaliation claims brought under the WLAD. *Donahue v. Central Washington University*, 140 Wn. App. 17, 26 (2007).

Ms. Grinenko contends that Defendants retaliated against her for reporting the sexual assault. Dkt. 180 at 11.

This claim fails as to all Defendants. In support of this claim, Ms. Grinenko offers only the conclusory statement that "[t]here are facts to support retaliation, in that all of the events that followed flowed from the unwelcome reports of rape and sudden unprecedented sexual harassment." *Id*. Apparently, Ms. Grinenko alleges that the adverse employment action she suffered was the sexual harassment perpetrated by Olympic employees. This claim is duplicative, as Ms. Grinenko has already alleged sexual harassment and wrongful discharge based on hostile work environment or sexual harassment. To the extent Ms. Grinenko alleges retaliation based on constructive discharge, she has failed to demonstrate how the constructive discharge was causally related to any protected activity.

**G.  WRONGFUL DISCHARGE**

Defendants move to dismiss Ms. Grinenko's wrongful discharge claim because she voluntarily resigned, and even if she could demonstrate that she was discharged, she has not identified a clear mandate of public policy that was violated. Ms. Grinenko maintains that she was constructively discharged. Dkt. 180, 15-16; Dkt. 17 at 20 (Plaintiff's complaint alleging "constructive discharge" under her wrongful termination cause of

action). Apparently, Ms. Grinenko is alleging that this discharge violated policies relating to sex discrimination. *See* Dkt. 180 at 15.[10]

A cause of action for wrongful discharge in violation of public policy may be based on constructive discharge. *Wahl v. Dash Point Family Dental Clinic, Inc*., 144 Wn. App. 34, 43 (2008) (*citing Syder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 238 (2001)). To prevail in a constructive discharge claim, an employee must prove (1) the employer deliberately made the working conditions intolerable, (2) a reasonable person would be forced to resign, (3) the employee resigned solely because of the intolerable conditions, and (4) damages. *Campbell v. State*, 129 Wn. App. 10, 23 (2005).

The tort of wrongful discharge in violation of public policy requires a plaintiff to prove four elements: (1) the existence of a clear public policy (the clarity element), (2) that discouraging the conduct in which she engaged would jeopardize the public policy (the jeopardy element), (3) the public-policy-linked conduct caused the dismissal (the causation element), and (4) the defendant must not be able to offer an overriding justification for the dismissal. *Wahl*, 144 Wn. App. at 41-42. To establish the clarity element, a plaintiff must establish the existence of a clear mandate of public policy. *Id.* The question of what constitutes a clear mandate of public policy is one of law. *Boring v. Alaska*, 123 Wn. App. 187, 196 (2004). "[T]here is a clear mandate in Washington of public policy against sex discrimination." *Wahl*, 144 Wn. App. at 42-43 (*citing Roberts v. Dudley*, 140 Wn.2d 58, 77 (2001)).

At this time, Defendants do not move for summary judgment of Ms. Grinenko's sexual discrimination claim against Olympic. *See* Dkt. 170 at 2. Defendants have not demonstrated that there is an absence of a dispute of fact as to the discrimination claim as

---

[10] The Court presumes that her wrongful discharge claim, labeled "termination in violation of public policy" in her complaint (Dkt. 17 at 18), is a state claim. She has cited no federal statutes or case law in support of this claim; nor has she otherwise indicated that this claim is also predicated on federal law.

1 it pertains to Olympic. Instead, they challenge Ms. Grinenko's wrongful discharge claim
2 based on her alleged failure to satisfy the clarity element. *Id.*, 18-19.[11]

The Court concludes that outstanding issues of fact preclude summary judgment as to Ms. Grinenko's claim against Olympic for wrongful discharge. Although Ms. Grinenko's complaint does not clearly identify a public policy, she implies that the public policy is based on sex discrimination. *See* Dkt. 17, 18-20 (Plaintiff's complaint alleging a violation of public policy under same cause of action which provides an account of conduct that she alleges constitutes sexual harassment), *and* Dkt. 180 (Plaintiff's response alleging "intolerable conditions" and citing *Wahl, supra*). Ms. Grinenko has alleged a hostile work environment based on conduct by Olympic employees. Further, she claims to have reported this conduct to her supervisors, that the conduct continued, and that she was forced to resign her position as a result of the continued harassment.

However, Ms. Grinenko's claim for wrongful discharge against Midles and Matson fails. Ms. Grinenko failed to demonstrate that Mr. Midles affirmatively engaged in discriminatory conduct that resulted in her constructive discharge. She also has not provided legal authority to support her claim that supervisors or human resources directors may be liable for this tort. Accordingly, they are not proper defendants to this claim.

**H. DUPLICATIVE CLAMS**

Defendants move to dismiss Plaintiff's "duplicative claims." Dkt. 170, 2-3. Plaintiff opposes this motion. Dkt. 180 at 9.

"A pleading that states a claim for relief must contain a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's "sexually pervasive and hostile work environment" claim on page 23 of her complaint is the same claim as her sex discrimination and sexual harassment claim on page 18. *See* Dkt. 17. Plaintiff's opposition to Defendants' request to dismiss these claims because the claims

---

[11]Defendants also do not challenge Ms. Grinenko's constructive discharge claim at this time. Dkt. 197, 11-12.

"are more specific" is disingenuous. Dkt. 180 at 9. Accordingly, the "sexually pervasive and hostile work environment" claim on page 23 is dismissed.

I. **MARITAL COMMUNITIES**

The claims against Midles' and Matson's marital communities addressed in this order are also dismissed. By this order, the Court dismisses Plaintiff's claims for sex discrimination, outrage, invasion of privacy, retaliation, and wrongful discharge against Mr. Midles. Accordingly, the claims against Mr. Midles' spouse for these claims are dismissed as well.

With regard to Mr. Matson, the discrimination and outrage claims remain. However, in Washington, the marital community is not liable when wrongful acts are not for the benefit of the community. *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 869 (2000). Here, no reasonable fact finder could conclude that Mr. Matson's alleged actions were for the benefit for the community. *See Francom*, 98 Wn. App. at 869 (defendant's alleged sexual harassment was outside the scope of his employment, and could not be considered to have been for the benefit of the community). Accordingly, the claims against Mr. Matson's spouse for these claims are dismissed as well.

### III. MOTION TO STRIKE AND SURREPLY

Defendants move to strike certain exhibits filed by Plaintiff because the exhibits are not authenticated. Dkt. 197 at 2.

"A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). "Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted." *Id.*

Plaintiff failed to properly authenticate some of the depositions filed in support of her opposition to the instant motion. *See, e.g.,* Dkt. 180-4, 1-7 (deposition of Ms.

Grinenko). Plaintiff filed a surreply and included exhibits which Plaintiff's counsel claims rectify the objections raised by Defendants. Plaintiff's surreply does not comply with Local Rule 7. *See* Local Rule 7(g)(2) (surreply limited to request to strike material contained in opposing party's reply).

In any event, for purposes of deciding the instant motion, the Court has considered evidence that Plaintiff cited in her opposing brief. Plaintiff has not directed the Court to evidence in the record, admissible or otherwise, which would alter the outcome of the instant motion. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (where no factual showing is made in opposition to a motion for summary judgment, the District Court is not required to search the record sua sponte for some genuine issue of material fact).

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. 170) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. The following claims against Dwight Midles, Jane Doe Midles, and Jane Doe Matson are **DISMISSED WITH PREJUDICE**: sexual harassment, hostile work environment, discrimination, termination in violation of public policy, invasion of privacy, retaliation, and outrage.

2. The following claims against Mel Matson are **DISMISSED WITH PREJUDICE**: invasion of privacy, retaliation, and termination in violation of public policy.

3. The following claims against Olympic are **DISMISSED WITH PREJUDICE**: invasion of privacy, retaliation, and Plaintiff's duplicative claim for sexually pervasive and hostile work environment against Olympic, found on page 23 of Plaintiff's amended complaint (Dkt. 17).

4. Defendants' motion to dismiss Plaintiff's sexual harassment, hostile work environment, discrimination, and outrage claims against Mel Matson and Olympic are **DENIED**, and these claims may proceed.

5. Defendants' motion to dismiss Plaintiff's wrongful termination claim against Olympic is **DENIED**, and this claim may proceed.

It is further **ORDERED** that Defendants' motion for partial summary judgment regarding Plaintiff's outrage claim (Dkt. 187) be **STRICKEN** as moot.

DATED this 11th day of December, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 19