UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH GRINENKO,

    Plaintiff,

v.

OLYMPIC PANEL PRODUCTS;
RANDY WARD, et al.,

    Defendants.

CASE NO. C07-5402BHS

ORDER DENYING
DEFENDANT WARD'S
MOTION FOR JUDGMENT
ON THE PLEADINGS AND
FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Randy Ward's Motion for Judgment on the Pleadings and for Summary Judgment. Dkt. 184.

The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Except where otherwise indicated, the following facts are undisputed or taken in the light most favorable to Plaintiff, the nonmoving party:

Ms. Grinenko was employed by Olympic Panel Products ("Olympic") from October of 2006 until May 18, 2007. Dkt. 17 at 3. Mr. Ward was one of Ms. Grinenko's co-workers. *Id*. at 2.

In March of 2007, Ms. Grinenko was the victim of a sexual assault that caused her serious injury. *Id*. at 3. Ms. Grinenko reported the incident to her supervisor and human resources manager and was granted time off of work. *Id*., 4-5. Her supervisor told

Toinette Wines, an Olympic employee, about Ms. Grinenko's reporting of the sexual assault. *Id*. at 5. Ms. Grinenko maintains that other Olympic employees, including Mr. Ward, learned about the sexual assault, despite the fact that she never authorized any Olympic employee to disclose her reporting of the sexual assault, and never confided in anyone other than her supervisor and human resources manager about the assault. *Id*. at 5. Ms. Grinenko alleges that Mr. Ward told her that the human resources manager "never believed [that Ms. Grinenko had been sexually assaulted] . . . [but instead] thought [she] was just trying to get time off work." Dkt. 171 at 4 (Deposition of Sarah Grinenko).

Shortly after the sexual assault, Mr. Ward told Ms. Grinenko that he would like to get to know her better. Ms. Grinenko initially believed that Mr. Ward intended only to begin a friendship with her. Soon, however, Ms. Grinenko maintains that Mr. Ward made unwelcome and inappropriate advances towards her.[1]

According to Ms. Grinenko, Mr. Ward's alleged conduct included the following: (1) making inappropriate comments about Ms. Grinenko's breasts, (2) making a "flashing" gesture in the presence of Ms. Grinenko and Olympic supervisors in an effort to encourage Ms. Grinenko to expose her breasts, (3) taunting Ms. Grinenko about a sexually demeaning conversation he had with other Olympic employees, (4) placing a wood strip under his work clothes to feign an erection and "parading" around Ms. Grinenko, (5) showing Ms. Grinenko a picture of what he claimed to be his penis, (6) attempting to "control whom [she] talked to at work," (7) asking Ms. Grinenko to kiss him on several occasions, and (8) attempting to grab Ms. Grinenko in an effort to kiss her. Dkt. 203, 4-8.

As a result of Mr. Ward's and other employees' conduct, Ms. Grinenko maintains that she has suffered emotional distress. Ms. Grinenko was evaluated by David Hawkins,

---

[1]Ms. Grinenko's amended complaint and her response to the instant motion detail various encounters with other male employees who are not the subject of the instant motion, who also began to treat her with "overwhelming hostility" and made various sexual comments and unwanted advances towards her. Dkt. 17; Dkt. 203.

ORDER - 2

a licensed clinical psychologist whom she retained. Dr. Hawkins' evaluation indicates that Ms. Grinenko has a history of depression and suffered trauma as a result of her sexual assault. Dkt. 74-3 at 10 (Dr. Hawkins' evaluation). Dr. Hawkins opined that the alleged sexual harassment exacerbated Ms. Grinenko's current medical problems, including post traumatic stress disorder and anxiety. *Id.*

Ms. Grinenko filed a 27-page amended complaint on August 30, 2007, against Mr. Ward and other defendants. Dkt 17. Ms. Grinenko alleges three causes of action against Mr. Ward: (1) assault, (2) infliction of emotional distress, and (3) outrage.[2]

## II. DISCUSSION

On November 18, 2008, Mr. Ward filed a motion to dismiss all of Plaintiff's claims. Dkt. 184.[3] On December 8, 2008, Plaintiff filed a response. Dkt. 203. Mr. Ward did not file a reply.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of

---

[2] Ms. Grinenko now characterizes her "infliction of emotional distress" claim as a claim for "negligent infliction of emotional distress." *See* Section II(C), *infra*.

[3] Mr. Ward moved to dismiss claims in addition to the outrage, infliction of emotional distress, and assault claims because he was unclear as to which of Plaintiff's claims were alleged against him, and which applied only to other defendants. Dkt. 184 at 2. In her response, Plaintiff states that her only claims against Mr. Ward are assault, negligent infliction of emotional distress, and outrage. Dkt. 203, 1-2 and 9. Thus, Mr. Ward's motion to dismiss Plaintiff's claims for invasion of privacy and "sexual harassment/hostile work environment/retaliation/discrimination/ termination in violation of public policy" pursuant to Fed. R. Civ. P. 12(c) and 56(c) are moot because Plaintiff maintains that those claims never applied to Mr. Ward. Accordingly, the Court will only address Mr. Ward's motion for summary judgment of Plaintiff's claims for assault, negligent infliction of emotional distress, and outrage.

ORDER - 3

proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     ASSAULT**

Mr. Ward moves to dismiss Ms. Grinenko's assault claim on grounds that she failed to allege any facts that constitute assault. Dkt. 184 at 8.

In Washington, "assault is intentionally creating an apprehension of harmful or offensive contact by causing a harmful or offensive contact or an imminent apprehension of such contact." *Orwick v. Fox*, 65 Wn. App. 71, 85 (1992) (citation omitted).

In her response, Ms. Grinenko included a declaration where she states that Mr. Ward attempted to grab her in an effort to kiss her. Dkt. 203-2, 2-3. Mr. Ward did not file a reply and has not challenged this declaration.

The Court concludes that there are outstanding issues of fact which preclude summary judgment on this claim, to include whether Mr. Ward attempted to grab Ms. Grinenko, and whether such conduct constitutes an assault.

**C. INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGE**

Mr. Ward moves for summary judgment on Ms. Grinenko's infliction of emotional distress and outrage claims.[4]

**1. Negligent Infliction of Emotional Distress**

While Mr. Ward refers to Ms. Grinenko's "infliction of emotional distress claim," for purposes of this order the Court will refer to this claim as "negligent infliction of emotional distress" as the claim is characterized in Ms. Grinenko's response.

The elements of a negligent infliction of emotional distress claim are duty, breach of the standard of care, proximate cause, and damages. *Snyder v. Medical Service Corp. of Eastern Wash.*, 145 Wn.2d 233, 243 (2001). A plaintiff must prove emotional distress

---

[4] In her amended complaint, Ms. Grinenko alleged one claim for "infliction of emotional distress" and one claim for "outrage." Dkt. 17 at 22. Under the "infliction of emotional distress" cause of action, Ms. Grinenko alleges that "[a]ll Defendants other than Defendant Dobson herein, took deliberate action either intended to cause the Plaintiff to suffer emotional distress or of such a caliber that they knew or should have known that Plaintiff would be caused to suffer emotional distress."*Id.* She did not specifically allege "negligent infliction of emotional distress" in her complaint, but maintains that she has pled this cause of action in her response. Dkt. 203, 9-12. Mr. Ward did not file a reply, and does not appear to contest Ms. Grinenko's assertion that she has pled a negligent infliction of emotional distress claim.
In Washington, outrage and intentional infliction of emotional distress claims are treated as one in the same. *Snyder v. Medical Serv. Corp. of Eastern Wash.*, 98 Wn. App. 315, 321 (1999). Washington courts recognize a separate cause of action for negligent infliction of emotional distress. *See, e.g., Kloepfel v. Bokor*, 149 Wn.2d 192 (2003). Because both Mr. Ward and Ms. Grinenko are treating the infliction of emotional distress claim and outrage claims as two separate claims, the Court presumes for purposes of this order that Ms. Grinenko has pled a negligent infliction of emotional distress claim against Mr. Ward, in addition to her outrage claim.

by "objective symptomatology." *Kloepful v. Bokor*, 149 Wn.2d 192, 196 (2003). The symptoms of emotional distress must also "constitute a diagnosable emotional disorder." *Id.*

Mr. Ward contends that Ms. Grinenko has provided "no objective symptomatology of her claimed emotional distress." Dkt. 184 at 9. He maintains that Ms. Grinenko has failed to demonstrate that any emotional distress she suffered resulted from the alleged sexual harassment because Ms. Grinenko is "unable to separate any mental distress she may have resulting from her prior [medical] history [including a prior depression diagnosis], the alleged rape, or her employment at [Olympic]." *Id*. at 12. Mr. Ward also contends that Ms. Grinenko's test results from an evaluation indicate that she "scored high on the scales that suggest exaggeration and/or untruthful responses." *Id*. at 18. Finally, Mr. Ward contends that summary judgment is proper because Ms. Grinenko's evaluating psychologist, Dr. Hawkins, never mentioned Mr. Ward by name as being a "source of [Ms. Grinenko's] distress." *Id.* at 19.

The Court concludes that Ms. Grinenko's negligent infliction of emotional distress claim against Mr. Ward may proceed. While Ms. Grinenko's medical background may include depression, and while some of her alleged emotional distress may have resulted from the sexual assault, there remains outstanding issues of fact as to whether the alleged sexual harassment aggravated the emotional distress that may have already existed. First, Dr. Hawkins concluded that the sexual harassment aggravated the trauma she was already experiencing as a result of the sexual assault, as well as the problems associated with her history of depression. Dkt. 203, 10-11 (Dr. Hawkins' evaluation); *see also* Dkt. 184 at 19 (Mr. Ward's motion for summary judgment, quoting Dr. Hawkins' statement that he "attributed [Ms. Grinenko's symptoms] to both the rape and to the harassment").

Second, while Dr. Hawkins did not mention Mr. Ward by name, Dr. Hawkins appears to have based his evaluation in part on Ms. Grinenko's statements about the alleged sexual harassment perpetrated by Olympic employees. Ms. Grinenko has alleged

1 that Mr. Ward was an active participant in various acts of harassment, and the question of
2 whether those acts contributed to Ms. Grinenko's alleged emotional distress is one for a
3 trier of fact.

Finally, Mr. Ward's argument about the trustworthiness of Ms. Grinenko's statements goes to credibility, and also raises a question for a trier of fact.

### 2. Outrage

To state a claim for the tort of outrage or intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Seaman v. Karr*, 114 Wn. App. 665, 684 (2002). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (citation omitted). The question of whether conduct is sufficiently outrageous is ordinarily for the jury. However, the trial court makes the initial determination of whether "reasonable minds could differ about whether the conduct was so extreme as to result in liability." *Id.* (*citing Dicomes v. State*, 113 Wn.2d 612, 630 (1989)). Among other factors, in making this determination a court considers "whether the defendants were aware that there was a high probability that their conduct would cause severe distress, and they consciously disregarded it." *Id.* at 685.

In contrast to a negligent infliction of emotional distress claim, objective symptomatology is not required to establish an outrage claim. *See Kloepfel*, 149 Wn.2d at 198. "A plaintiff claiming intentional infliction of emotional distress must show extreme and outrageous conduct intended to cause (or reckless regarding) emotional distress to the plaintiff. Once these have been shown, it can be fairly presumed that severe emotional distress was suffered." *Id*., 201-02.

Mr. Ward contends that Ms. Grinenko's outrage claim fails because she has not demonstrated that she suffered mental distress and because the acts she alleges do not "come close to the level of conduct required for the tort of outrage." Dkt. 184 at 21.

Ms. Grinenko's outrage claim may also proceed. Even if she were required to demonstrate "objective symptomatology," there are outstanding issues of fact relating to her alleged emotional distress as discussed above.

In addition, the Court concludes that reasonable minds could differ on whether Ms. Grinenko's allegations, if true, constitute outrage. Ms. Grinenko has alleged that Mr. Ward was aware of her sexual assault, based on his statement to her about the assault. She further alleges that Mr. Ward participated in various acts as discussed in Section (I) above with knowledge that Ms. Grinenko had recently suffered a sexual assault. A trier of fact may determine whether the alleged conduct rises to the level of outrage.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Defendant Randy Ward's Motion for Judgment on the Pleadings and for Summary Judgment (Dkt. 184) is **DENIED**, and Plaintiff's claims may proceed as stated herein.

DATED this 6th day of January, 2009.

BENJAMIN H. SETTLE
United States District Judge